Erieg Estate.

Argued January 19, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Scott A. Williams*, with him *Furst, McCormick, Lynn, Reeder & Nichols*, for appellant.

*John C. Youngman, Jr.*, and *Harry R. Gibson*, with them *Candor, Youngman, Gibson & Gault*, for appellee.

OPINION BY MR. JUSTICE ROBERTS, July 2, 1970:

James S. Erieg died testate on November 4, 1965. His will provided, inter alia:

"ITEM I. I give all my tangible personal property (not including cash and securities) and my insurance thereon to my wife, Claire W. Erieg.

"ITEM II. I give the residue of my estate, of whatsoever kind and wheresoever situate, as follows: (a) Sixty-seven (67) per cent thereof to my wife, Claire W. Erieg; (b) Thirty-three (33) per cent thereof to my niece, Jane Levering Laher.

. . . .

"ITEM IV. All taxes and interest and penalties thereon payable by reason of my death with respect to property comprising my gross taxable estate, whether or not passing under this Will, shall be paid from my residuary estate."

The executor submitted a statement of proposed distribution in which it indicated its intention to wind up the affairs of the Erieg estate by distributing $118,048.01 to Claire W. Erieg and $33,604.26 to Jane Levering Laher.[1] Jane Laher filed objections to the proposed

---

[1] After calculating that the federal tax liability for the estate would be $16,648.41, and that the taxable residue, for federal estate tax purposes, was $225,195.05, the executor apportioned the federal estate tax as follows:

| Wife's (67%) | | Jane Laher's (33%) |
|---|---|---|
| 150,880.68 | Residuary | 74,314.37 |
| —146,869.14 | Non taxable Marital Deduction | |
| 4,011.54 | | 74,314.37 |
| | 78,325.91 | |
| 4,011.54 | | 74,314.37 |
| 78,325.91=.051215 | | 78,325.91=.948785 |

$852.68—Portion of estate tax charged against wife's taxable estate

$15,795.73—Portion of estate tax charged against Jane Laher's taxable estate.

The executor then took this calculation and recommended the following distribution of the $227,041.84 residue:

| Wife (67%) | | Jane Laher (33%) |
|---|---|---|
| 152,118.03 | | 74,923.81 |
| 3,067.34 | Penna. Inheritance Tax | 10,673.82 |
| 149,050.69 | | 64,249.99 |
| 852.68 | Federal Estate Tax | 15,795.73 |
| 148,198.01 | | 48,454.26 |
| 30,150.00 | Partial Distribution | 14,850.00 |
| 118,048.01 | Final Distribution | 33,604.26 |

distribution, asserting that a disproportionate share of the estate's tax liability had been charged against her part of the estate. She based her claim on ITEM IV of the Will, which she interpreted as requiring the payment of all taxes from the principal of the residue before computation of the residuary legatees' shares.[2] The executor disagreed with Jane Laher's interpretation of ITEM IV and argued that the proposed distribution was mandated by several statutory provisions[3]

---

[2] Jane Laher's alternative method of distribution is to deduct the federal estate tax liability and the state inheritance tax liability, a total of $30,389.57, from the residue before distribution, leaving a total of $196,652.27. Using this method the widow's share of the residue would be worth $131,757.02 and Jane Laher's share would be $64,895.25, or $16,440.99 more than she would receive under the executor's distribution.

[3] Section 718 of the Inheritance Tax Act of 1961 states:

"(a) Outright Devises and Bequests.—In the absence of a contrary intent appearing in the will, the inheritance tax imposed by this act on the transfer of property which passes by will absolutely and in fee, and which is not part of the residuary estate, shall be paid out of the residuary estate and charged in the same manner as a general administration expense. Such payment shall be made by the personal representative and, if not so paid, shall be made by the transferee of the residuary estate.

"(b) Transfer for Limited Period. In the absence of a contrary intent appearing in the will or other instrument of transfer, the inheritance tax imposed by this act, in the case of a transfer of any estate income or interest for a term of years, for life, or for other limited period, shall be paid out of the principal of the property by which the estate, income or interest is supported. Such payment shall be made by the personal representative and, if not so paid, shall be made by the trustee, if any, and, if not so paid, shall be made by the transferee of such principal.

"(c) Other Transfers. In the absence of a contrary intent appearing in the will or other instrument of transfer and except as provided in subsections (a) and (b) of this section, the ultimate liability for inheritance tax imposed by this act shall be upon each transferee." 1961, June 15, P.L. 373, Art. VII, §718; 1963, July 26, P.L., 325, §2, 72 P.S. §2485-718.

And the Estate Tax Apportionment Act states that:

which require, "absent a contrary intent appearing in the will," proration of the estate tax liability among

"General rules

"(a) Powers of Testator or Settlor. A testator, settlor, or possessor of any appropriate power of appointment may direct how the estate tax shall be apportioned or allocated or grant a discretionary power to another so to direct. Any such direction shall take precedence over the provisions of this act insofar as the direction provides for the payment of the estate tax or any part thereof from property, the disposition of which can be controlled by the instrument containing the direction or delegating the power to another.

"(b) Present and Remainder Interests. When estate tax shall be apportioned in a situation involving both a present and future interest, the amount apportioned, including interest and penalties, shall be paid entirely from principal, even though the holder of the present interest also has rights in the principal.

"(c) Separate Apportionment of Interest and Penalties—Special Circumstances. When the orphans' court shall find that it is inequitable to apportion interest and penalties in the same manner as the principal of the estate tax by reason of special circumstances, it may direct apportionment of interest and penalties in a manner different from principal.

"(d) Outright Devises and Bequests. No estate tax shall be apportioned against a distributee of a devise or bequest (1) which passes by will, absolutely and in fee, and (2) which is not part of the residuary estate. Any estate tax attributable thereto shall be paid entirely from the residuary estate, and charged in the same manner as a general administration expense, except that where a portion of the residuary estate is an interest described in clause (1) of subsection (b) of section 4, such tax shall be paid from the portion of the residuary estate which is not such an interest."
1951, Aug. 24, P.L. 1405, §3, as amended 1965, Dec. 22, P.L. 1204, §1, 20 P.S. §883 (Supp. 1970).

"Method of apportionment

"(a) Basis of Apportionment. Apportionment of the estate tax, except as provided in section three, shall be made among the persons interested in property includible in gross estate in the proportion that the value of the interest of each such person bears to the value of the net estate before exemption. The values used in determining the amount of tax liability shall be used for this purpose.

the residuary beneficiaries in accordance with a set formula.[4]   The proposed distribution was confirmed by the auditing judge, Jane Laher filed exceptions, and the orphans' court, sitting en banc, dismissed the exceptions and affirmed the decree. It is from this decision that Jane Laher now appeals.

---

"(b) Treatment of Deductions and Credits. The following principles shall apply with respect to deductions and credits allowable: (1) Deductions Allowed by Federal Revenue Laws in Determining the Value of Decedent's Net Estate. Any interest for which deduction is allowable under Federal revenue laws in determining the value of decedent's net estate, such as property passing to or in trust for a surviving spouse and charitable, public or similar gifts or bequests to the extent of the allowed deduction, shall not be included in the computation provided in subsection (a) of section four hereof, and to that extent no apportionment shall be made against such interest, except that when such an interest is subject to a prior present interest which is not allowable as a deduction, the estate tax apportionable against the present interest shall be paid from principal.

"(2) Property Previously Taxed and Gift Tax. Any deduction for property previously taxed and any credit for gift taxes or taxes of a foreign country paid by the decedent or his estate shall inure to the proportionate benefit of all persons liable to apportionment.

"(3) Credit for State Taxes. Any credit for inheritance, succession or estate taxes or taxes in the nature thereof in respect to property or interests includible in the gross estate shall inure to the benefit of the persons or interests chargeable with the payment of such taxes to the extent or in proportion that the tax paid or payable reduces the estate tax.

"(4) Inheritance or Death Tax Effect. To the extent that property passing to or in trust for a surviving spouse does not constitute an allowable deduction solely by reason of an inheritance tax or other death tax imposed upon and deductible from such property, it shall not be included in the computation provided for in subsection (a) of section four hereof, and to that extent no apportionment shall be made against such property." 1951, Aug. 24, P.L. 1405, §4, as amended, 1956, May 10, P.L. (1955), 1559 §1, 20 P.S. §884 (Supp. 1970).

[4]See footnote 1, supra.

We must begin with the proposition that the several applicable statutes create "a presumption that a testator intends that proration should be made in accordance with . . . [the statutory] terms, unless his will contains a specific provision, clearly expressed, inconsistent with such presumption, and, to accomplish that result, his language must not be of doubtful import." *Stadtfeld Estate*, 359 Pa. 147, 152, 58 A. 2d 478, 481-82 (1948) (interpreting the now repealed predecessor of the Act of August 24, 1951, P.L. 1405, as amended 20 P.S. §§883-84). See *Wahr Estate*, 370 Pa. 382, 88 A. 2d 417 (1952). The aim of these statutes is to promote the presumed intentions of most testators. Since the statutes represent the Legislature's judgment as to the normal intention of testators, the provision which renders them inapplicable must be unambiguous and open to no other interpretation. *In Re Shubert's Will*, 10 N.Y. 2d 461, 225 N.Y.S. 2d 13 (1962).

Our reluctance to abandon the statutory scheme of proration without a clear indication that such was the testator's intent is based in great measure on the fact that the effect of such a departure is to take the tax relief available to the testator's spouse and use it to benefit all beneficiaries under the will. In the instant case the effect of utilizing Jane Laher's proposed method of distribution would be to take the widow's federal estate tax exemption and the more favorable state inheritance tax rate on the widow's inheritances and distribute a portion of those benefits to Jane Laher, giving her $16,440.99 more than she would get under the executor's proposed distribution and giving the widow correspondingly less. We will permit a testator to deprive his widow, the primary object of his bounty, of much of her favored tax treatment, but only on a clear showing that such was his intention.

We do not find that the directive in ITEM IV that "[a]ll taxes . . . shall be paid from my residuary es-

tate," provides the explicit expression of a contrary intent necessary to render the statutory presumption inapplicable. Both the executor's and Jane Laher's proposed methods of distribution would be consistent with the direction that all taxes be paid from the residue. The question in this case is not whether the taxes are to be deducted from the residue, but from whose share of the residue they should be taken. And ITEM IV can hardly be said to contain any guidance on this point.

There is yet another reason for interpreting ITEM IV as we do: the decedent probably included ITEM IV because, at the time the will was written, October 20, 1965, the statutory scheme of proration required that *all* beneficiaries, including those receiving specific pecuniary legacies, had to share the burden of paying the estate taxes. Act of August 24, 1951, amended by Act of December 22, 1965, P.L. 1204, 20 P.S. §883(d). In light of this provision the decedent might well have added ITEM IV, which is not an uncommon clause, in order to insure the integrity of his specific bequests, and non-probate assets and not with any thought to affecting the proration of taxes between the two residuary legatees. Given this highly probable alternative explanation for the inclusion of ITEM IV, we are hardly willing to give it the much broader interpretation urged on us by Jane Laher.[5]

Appellant argues that the cases of *North Estate,* 50 Pa. D. & C. 703 (1944); *Audenried Estate,* 376 Pa. 31, 101 A. 2d 721 (1954), affirming on the opinion reported at 84 Pa. D. & C. 468 (1953); and *Estate of Bernard*

---

[5]We recognize that this reasoning does not apply to the Inheritance Tax Act, since that law was passed in 1961. However, given the apparent disparity between the two acts it is most likely that this general "pay tax" clause was inserted in the will to confirm the mandate of the Inheritance Tax Act and to insure that both the Commonwealth and the Federal taxes would be apportioned in similar fashion.

*M. Weiss,* ¶60,219, P-H Tax Ct. Mem., are dispositive of the case at hand and require a reversal. We have studied these cases carefully and find them inapposite.

In *North Estate,* 50 Pa. D. & C. 703 (1944), the "pay tax" clause was a good deal more explicit than the one involved in the instant will, stating that the estate taxes were to be paid "out of the corpus or principal of my residuary estate," obviously indicating that the taxes were to be paid before distribution of the residuary. Additional distinguishing factors are that the residuary legatees involved were charities rather than a widow and that the court found a clear testamentary intent to treat all the residuary legatees (17) equally. But see *Wahr Estate,* 370 Pa. 382, 88 A. 2d 417 (1952).

In *Audenried Estate,* 376 Pa. 31, 101 A. 2d 721 (1954), adopting opinion reported at 84 Pa. D. & C. 468 (1953), the "pay tax" clause stated that: "I direct that all . . . taxes on all legacies herein contained in my Will shall be paid from my residuary estate, and be charged to the principal thereof." In addition to the explicit direction that the tax payments were to be charged to the principal of the residuary, the court relied on the fact that, since the testator had at other points in the will demonstrated that he knew how to distinguish between varying classes of legacies, his direction that the taxes be paid on "all legacies" was intended to include residuary legacies.

In *Estate of Bernard M. Weiss,* ¶60,219, P-H Tax Ct. Mem., the will contained an explicit direction to the executor ". . . not to . . . accept any deduction . . . on an apportionment basis . . . on account of the payment of such taxes from any legatees or devisees under this Will, or from any other donee or beneficiary." Again, this will is explicit where the Erieg will is not.

Having concluded that none of the cited cases nor any others we could find control the disposition of this case, we restate our conclusion that this will does not

contain a "pay tax" provision which is sufficiently clear to render the statutory apportionment scheme inapplicable. We hold that this general direction to pay all Estate taxes out of the residue is at most confirmatory of the statutory proration scheme and does not remove the will from the application of those laws.[6]

Decree affirmed.   Each party to pay own costs.

---

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

"All" taxes says and means "all" taxes; and all taxes payable "from my residuary estate" does not mean or say an apportionment of taxes in such a way as to benefit testator's wife; it means exactly what it says, namely, all taxes shall be payable from his residuary estate, giving 67 percent thereof to his wife and 33 percent to his niece.

I would reverse the Decree and direct that each party pay her own costs.

---

[6]An extensive and very persuasive discussion of this problem can be found in *Shubert's Will*, 10 N.Y. 2d 461, 225 N.Y.S. 2d 13 (1962). See also *New York Trust Co. v. Doubleday*, 144 Conn. 134, 128 A. 2d 192 (1956).