**NORTHEASTERN PENNSYLVANIA NATIONAL BANK & TRUST COMPANY, Executor Under the Last Will and Testament of Frank E. Rodgers, Deceased, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 71–66.**

United States District Court, M. D. Pennsylvania.

June 16, 1973.

As amended Aug. 13, 1973.

James K. Peck, James K. Peck, Jr., Scranton, Pa., for plaintiff.

S. John Cottone, Scranton, Pa., Edward J. Snyder, Tax Div., U. S. Dept. of Justice, Washington, D. C., for defendant.

## OPINION

MUIR, District Judge.

Frank E. Rodgers, a resident of Pennsylvania, died testate on September 7, 1966. The Plaintiff-executor filed an estate tax return which reflected a gross estate of $3,338,226.13 and a tax of $413,-045.83. The Commissioner of Internal Revenue Service assessed a deficiency of $119,955.83 plus interest which Plaintiff paid. Plaintiff has brought this suit for refund of the disputed sum. Only a portion of the claim remains contested at this time.

This case turns on whether the marital trust set up by the will should bear any share of the federal and state death taxes. Basic to the resolution of this question are three provisions of the will: (1) that the inheritance and estate taxes are to be paid from the residuary estate; (2) that the residuary estate is to be held in trust for decedent's wife, son and grandchildren, with 50% of the residue to be placed in the trust for his wife, 25% for his son and 25% for his grandchildren; and (3) that notwithstanding any other provision of the will, the Executor shall not have any duties or authority if or to the extent that such would disqualify the wife's trust from the maximum marital deduction.

Section 2056 of the Internal Revenue Code of 1954 provides that in computing the value of the taxable estate, the value of any interest which passes to the surviving spouse, up to a maximum of 50% of the value of the adjusted gross estate, is to be deducted from the value of the gross estate.[1]

---

1. 26 U.S.C. § 2956(a) and (c)(1).

However, if under the applicable state law the marital interest is required to bear a part of the death taxes, the amount of the deduction is reduced accordingly.[2] Under Pennsylvania law, death taxes are to be charged against the marital interest only if there is "a clear indication that such was the testator's intent."[3] Here not only is such an indication absent, but Rodgers' intent that the marital share be free of death taxes is clear.

■ The Commissioner's contention that Rodgers intended to have the residue *after taxes* shared in a ratio of 2:1:1, between the trusts for his spouse, son and grandchildren, respectively, is based on two aspects of the bequest in trust: (1) the division of the residue into trust corpora in a precise ratio of 2:1:1;[4] and (2) the provision that the wife, son and grandchildren receive from their trusts minimum monthly payments of $3,000.00, $1,500.00 and $1,500.00 respectively, payments which are also in a ratio of 2:1:1. In order to achieve an after-tax ratio of the trusts of 2:1:1, the spouse's trust would have to be charged with a pro rata share of the death taxes. Thus the Commissioner concludes that not all of the spouse's half of the residue should receive the marital deduction.

In the leading Pennsylvania case of Erieg's Estate,[5] the decedent gave 67% of the residue of his estate to his wife and 33% to his niece. The will provided, as Rodgers' will does, that all taxes were to be paid from the residuary estate. The niece argued that the taxes should be deducted prior to the computation of the residuary legatees' shares; i. e., that the testator intended to give her 33% of the residue *after taxes*. The Pennsylvania Supreme Court rejected this argument. Stating that a widow is to be deprived of her favored tax treatment only on a clear showing that such was the testator's intention,[6] it found that the niece had not made the requisite showing. The Court noted that the provision for the taxes to be. paid from the residuary estate was not probative of the critical question: from whose share of the residue the taxes should be taken.[7] The Court found that this "pay tax" provision had probably been included because

"at the time the will was written, October 20, 1965, the statutory scheme of proration required that *all* beneficiaries, including those receiving specific pecuniary legacies, had to share the burden of paying the estate taxes. Act of August 24, 1951, amended by Act of December 22, 1965, P.L. 1204, 20 P.S. § 883(d). In light of this provision the decedent might well have added Item IV, [the "pay tax" provision] which is not an uncommon clause, in order to insure the integrity of his specific bequests, and non-probate assets and not with any thought to affecting the proration of taxes between the two residuary legatees."[8]

The Pennsylvania Supreme Court's view of the "pay tax" clause in *Erieg* applies with equal force to the similar clause in the instant will since there were no relevant legislative changes between October 20, 1965, the date of the will at issue there, and July 29, 1966, the date on which Rodgers' will was signed.

The only difference of any substance between Rodgers' will and the *Erieg* will which is favorable to the Commissioner's position is that the former but not the latter provides for minimum monthly

2. Dodd v. United States, 345 F.2d 715, 717 (3d Cir. 1965) ; Riggs v. Del Drago, 317 U.S. 95, 98, 63 S.Ct. 109, 87 L.Ed. 106 (1942). See 26 U.S.C. § 2056(b)(4) (A).

3. Erieg's Estate, 439 Pa. 550, 556, 267 A.2d 841, 845 (1970) (interpreting and applying the now repealed, but here controlling, Estate Tax Apportionment Act

of 1951, Aug. 24, 1951, P.L. 1405, as amended, 20 P.S. §§ 883, 884).

4. See (2) of the second paragraph of this Opinion.

5. 439 Pa. 550, 267 A.2d 841 (1970).

6. Id. at 556, 267 A.2d 841.

7. Id. at 557, 267 A.2d 841.

8. Id.

trust payments in the ratio identical to the ratio of the residuary shares but not to the ratio of such shares after taxes if the Commissioner's position is rejected. While this provision is some evidence that Rodgers intended to have taxes charged to the marital share, it is not the "clear indication" required by *Erieg's Estate*, supra.

Another difference, and one of critical importance, is that Rodgers' will in ¶ VIIIA3(b) states

"3. *I* provide and *direct that notwithstanding any other provisions contained herein,* . . .

(b) *That the Executor* and trustee *shall not have any* rights, powers, privileges, *duties,* authority, immunities, or discretion, *given by any other provision of this,* my Last *Will* and Testament, *if or to the extent that such would disqualify Trust A* [the Marital Trust] *for the maximum marital deduction.*" (Emphasis supplied).

If the executor were to charge the taxes generally to the residue, the wife's share in residue would bear a portion of the taxes which would disqualify it from the maximum marital deduction. Such payment of taxes from the residue would be in direct conflict with ¶ VIIIA3(b), and the testator has directed that in such an event ¶ VIIIA3(b) prevails. Likewise, if the ratio of 2:1:1 of the minimum monthly payments were interpreted to require the executor to set up corpora in a ratio of 2:1:1 by charging the death taxes generally to residue before computing the distributive shares, the conflicting direction to obtain the maximum deduction for the marital trust would take precedence.

The direction to obtain the maximum marital deduction is the clearest and the predominant evidence of Rodgers' intent. His primary objective can be achieved here only if the wife's residuary share is free of federal estate tax.

The Plaintiff is entitled to judgment in the amount of $117,376.78 plus interest of $16,231.76 paid, or a total of $133,-602.54, together with interest from May 12, 1970. If evidence is submitted to support a credit for state death taxes greater than $59,880.67, Plaintiff will be entitled to an additional refund of up to $329.70 and of up to $45.59 of interest paid, no interest to be paid on such additional refund attributable to state death taxes paid, as provided in § 2011 (c), Internal Revenue Code of 1954.

This opinion constitutes the court's findings of fact and conclusions of law. An order in accordance herewith will be entered.