## Fischer Estate

*Paul E. Bomze, Howard N. Greenberg,* for the accountant.

*Abraham M. Mora, Jerome B. Apfel,* for Kidney Foundation of Southeastern Pennsylvania.

*Mercer D. Tate,* for Arthritis Foundation — Eastern Pennsylvania Chapter.

*Richard J. Ruth,* for American Diabetes Association, Inc.

*H. Clayton Louderback, Kenneth J. Levin,* for American Heart Association, Southeastern Pennsylvania Chapter.

TAXIS, *J.,* September 18, 1980 — The account shows a balance of principal and income in the amount of $4,477,732.11, composed of cash, securities, and jewelry, as set forth on page 2 of the account.

The transfer inheritance tax assessed has been paid.

All parties having or claiming any interest in the estate, of whom the accountants have notice or knowledge, are stated to have received written notice of the audit in conformity with the rules of court.

The attorney general of the Commonwealth of Pennsylvania was notified and returned a charitable gift clearance certificate. However, the attorney general appeared at the audit of the account and filed objections to the apportionment of the federal estate tax.

At the time of audit, the court was asked to pass upon the following questions: (1) did the executors improperly compute and apportion the federal estate tax, in violation of the tax clause contained in

Article Fifth of the decedent's will, and in violation of applicable law, causing an overpayment of taxes by the estate in the sum of $213,591, and a misallocation of taxes in the sum of $177,770 in favor of the noncharitable beneficiaries of the nonprobate assets and (2) did the executors improperly include certain assets in decedent's gross estate for federal estate tax purposes?

Decedent died on December 6, 1977, leaving a will dated April 28, 1976. By her will, decedent made pecuniary bequests to three former employees and a $10,000 pecuniary charitable bequest. Decedent bequeathed the residue of her estate in equal shares to eight named charitable organizations.

For federal estate tax purposes, decedent's gross estate included the assets of two trusts: (1) a trust created October 2, 1968 (the "1968 Trust"), the corpus of which was payable upon decedent's death to her estate and therefore is considered as part of decedent's probate estate ("probate estate"); and (2) a trust created July 8, 1958 (the "1958 Trust"), the corpus of which, upon decedent's death, was payable to four individuals and therefore constitutes nonprobate property. The nonprobate property also includes the taxable portion of gifts made by decedent to Robert H. Houser and Joan Rinker within three years of death.

By Article Fifth of her will, decedent directed the payment of taxes as follows:

FIFTH: All Federal, State and other death taxes payable because of my death on property *passing under my Will* shall be paid out of the principal of my residuary estate. All Federal, State and other death taxes payable because of my death on any other property forming my gross estate for death tax purposes *and not passing under my Will,* including but not limited to the assets of a certain Deed of

Trust executed the 8th day of July, 1958, by me, as Settlor, and BERNARD FISCHER, JR., LOUISE S. FISCHER and PHILADELPHIA NATIONAL BANK as Trustees, shall be paid by the recipients of such property and shall not be charged against my residuary estate. (Emphasis supplied).

The 1958 trust contains no provision for the payment of death taxes.

The accountants filed a federal estate tax return and paid federal estate tax in the amount of $1,820,967.51. The Internal Revenue Service accepted the computation of the federal estate tax liability and the accountants received a tax closing letter issued August 10, 1979. The accountants then apportioned the federal estate tax liability as follows: 71.98 percent to the probate estate and, in the nonprobate estate, 27.89 percent to the 1958 trust and 0.065 percent each to Robert H. Houser and Joan Rinker.

The Kidney Foundation of Southeastern Pennsylvania (objector), joined by the Arthritis Foundation and the Attorney General for the Commonwealth, contends that there has been both a miscalculation and a consequent misapportionment of the federal estate tax. We discuss first the question of apportionment because, in this instance, it comprises the question of the calculation of the tax.

Preliminarily, the court must decide if the tax clause in decedent's will governs the payment of taxes. Under Pennsylvania Law the apportionment of the federal estate tax is governed by the Estate Tax Apportionment Act of the Probate, Estates, and Fiduciaries Code (the "Apportionment Act" or "Act") unless the testator or settlor, in the governing instrument, directs in clear language a different method of apportionment. Our Supreme Court in Erieg Estate, 439 Pa. 550, 556, 267 A.2d 89 (1970),

held that under Section 3703 (a) of the Act, the presumption is that the testator intends that proration should be made in accordance with the Act unless his will contains a specific provision, clearly expressed, inconsistent with such a presumption, and, to accomplish that result, his language must not be of doubtful import.

Section 3704 (a) of the Act provides the general method of apportionment as follows:

Apportionment of the estate tax, except as provided in Section 3703 . . . (relating to general rules), shall be made *among the persons interested in property includible in gross estate in the proportion that the value of the interest of each such person bears to the value of the net estate before exemption*. The values used in determining the amount of tax liability shall be used for this purpose. (Emphasis supplied.)

Section 3703 (d) provides that no estate tax shall be apportioned against a distributee of a devise or bequest which passes by will absolutely and in fee, and is not part of the residuary estate. Tax on such bequests shall be paid from the residuary estate with the following exception:

(W)here a portion of the residuary estate is an interest described in section 3704 (b) (1) . . . (relating to deductions allowed by Federal revenue laws in determining the value of decedent's net estate), such tax shall be paid from the portion of the residuary estate which is not such an interest.

In apportioning the tax, Section 3704 (b) (1) provides that any interest for which deduction is allowable under federal revenue laws in determining the value of the decedent's net estate, such as property passing to charity, shall not be included in computing the apportionment. Finally, since exemptions no longer exist under the new federal estate

and gift tax code, the phrase "net estate before exemption" is the taxable estate for federal estate tax purposes.

The objector argues that the decedent provided adequate direction for the payment of death taxes to avoid the application of the Apportionment Act and to apportion the taxes between taxable probate *distributions* and taxable nonprobate *distributions,* which would serve to reduce the taxes paid by the estate. The objector refers to several cases containing tax clauses similar to the one contained herein where the Court found the direction sufficiently specific to overcome the Act. See Audenried Est., 376 Pa. 31 (1954); Haehnlen Est., 22 D.&C. 2d 493 (1960); North Est., 50 D.&C. 703 (1944). These references are inapposite because the residuary clauses included both charitable and noncharitable gifts thereby raising the question whether federal estate tax on the residuary gifts must precede distributions to the beneficiaries, thus requiring the charities to bear their share of the taxes.

The accountants maintain, and we concur, that this will does not set forth a method of apportionment different from the one set forth in the Act. The will states only that death taxes on probate property be paid from the principal of the residuary estate and death taxes on nonprobate property shall be paid by recipients of that property, all entirely consistent with the Act. However, the decedent did not direct *how* the apportionment should be accomplished. We find that the Apportionment Act applies. See Jones Est., 91 Montg. Co. L. R. 312 (1969).

The objector futher contends that, assuming the Act applies, the accountants improperly apportioned the death taxes. The objector states that the apportionment should be based upon the "value of the in-

terest of the pecuniary legatees under the Will" and the "value of the interest of the non-probate beneficiaries" in the proportion that each bears to the value of the sum of the two figures. The total tax and allowable charitable deduction would then be computed pursuant to applicable federal tax procedures with a consequent reduction in the total federal estate tax due.

This argument has a facade of persuasiveness. A brief review of the method employed by the accountants in determining the tax liability of the estate is in order, considering the unusual nature of this problem. It is clear that, in order to apportion the federal estate tax in accordance with the Act, the taxable estate must be computed in accordance with the Internal Revenue Code (I.R.C.). Accountants first reduced the taxable probate estate and taxable nonprobate estate by their respective deductions, exclusive of the charitable deduction.

For purposes of determining the taxable estate, I.R.C. Section 2055 allows a deduction from the gross estate for the value of property passing to charities. However, I.R.C. Section 2055 (c) further provides that, to the extent that any taxes are payable out of the charitable bequest, the deduction shall be the amount of the gift reduced by the taxes paid. In this case, because the residuary estate passing to charities is burdened with the payment of a portion of federal estate taxes, the amount of the charitable deduction is reduced by the amount used to pay taxes.

As a result of these particular provisions, a smaller charitable deduction results in a larger taxable estate thereby producing a larger tax which again reduces the allowable deduction, and so on in turn. To terminate this endless cycle, the amount of the charitable deduction can be determined only by in-

terrelated computations either by use of a trial and substitution method, as the accountants employed here, or by algebraic formula. The Internal Revenue Service has issued instructions, which the accountants have followed, for computing the charitable deduction where the deductible property is burdened with the payment of taxes.

In calculating the interrelated computation, it is first necessary to determine what property must bear the payment of federal taxes. Since the Act provides that the tax be apportioned among the persons interested in the property includible in the gross estate in the proportion that the value of each interest bears to the net estate before exemption, the apportionment should be made initially between the taxable probate estate and the taxable nonprobate estate. The accountants determined the taxable nonprobate estate by subtracting from the gross nonprobate estate any deductions attributable thereto. They derived a taxable nonprobate estate of $1,250,905.91.

The taxable probate estate is calculated in a similar fashion, i.e., by subtracting the allowable deductions from the gross probate estate, including the deduction for the amount passing to charity. One must bear in mind, however, that the charitable residue deduction depends on the amount of federal estate tax payable from the residue. The two interdependent factors, the charitable deduction and the taxable probate estate, cannot be ascertained unless the federal estate tax and the amount of federal estate tax payable by the residue are determined by interrelated computations. Using the trial and substitution method prescribed by the Internal Revenue Service, the accountants derived a taxable probate estate of $3,213,345.97.

Having determined the taxable probate estate, the accountants necessarily determined the taxable estate since the federal estate tax could not be determined without deriving the taxable estate. The sum of the taxable probate estate and the taxable nonprobate estate produces a taxable estate of $4,464,251.88. The accountants then calculated the federal estate tax to be $1,820,967.51.

In apportioning the federal estate tax, the accountants relied on Section 3704 (a) of the Act. The accountants computed the tax attributable to the taxable probate estate by multiplying the total federal estate tax by a fraction, the numerator of which was the taxable probate estate and the denominator of which was the taxable estate. The accountants employed the same formula in calculating the tax attributable to the taxable nonprobate estate, substituting the taxable nonprobate estate amount for the numerator.

The objector contends that the accountants erred in their apportionment because the tax should have been apportioned between the taxable nonprobate distributions of $1,061,606.56 and the taxable probate distributions of $1,662,683.14, by objector's calculation, which would have resulted in an increased federal estate tax charitable deduction, thereby reducing the federal estate tax by $213,591. In addition, the 1958 Trust would be required to contribute an additional sum of $177,770 towards the payment of the tax as its pro rata share of the liability.

The objector's argument has appeal because of the alleged increased benefit to the charities but it is not consistent with the language of the Act. The Act directs that the values employed in apportioning the tax shall be those used in determining the tax liability of the estate. The accountants did not compute

the federal estate tax based on distributable probate and nonprobate assets because the tax is properly applied to the net assets after subtracting allowable deductions. The court therefore finds that the accountants employed the appropriate values.

The objector further maintains that the method of apportionment used by the accountants is impractical and inequitable in that it results in the increased federal estate tax. The objector notes that the initial inclusion of the assets of the 1958 Trust almost doubles the amount of federal estate tax to be paid and that approximately 56 percent of this additional tax burden is placed on the probate estate. The increased tax is, in part, attributable to the "tax on a tax", that is, a tax on a portion of the federal estate tax otherwise payable.

With respect to the objector's argument that the method employed by the accountants results in a "tax on tax", that argument has been dealt with in Dulles v. Johnson, 273 F. 2d 362, 369 (2d Cir., 1959), cert. den. 364 U.S. 834 (1960), where the Court interpreted the predecessor to I.R.C. Section 2055 (d), Section 812 (d) of the 1939 Code. In response to the argument that, after the estate tax is computed without regard to the fact that part of the tax is payable out of a deductible bequest, and a sum equal to the portion of the tax which, if paid, would have been paid out of the charitable bequest is added to the taxable estate and the tax recomputed, the recomputation should cease, the court explained:

Plaintiffs argue that at this point recomputation should cease, and that the process should not continue ad infinitum. We disagree. The amount of estate tax payable under Section 810 depends on the value of the net estate. The value of the net estate is determined by subtracting allowable de-

ductions from the gross estate including any charitable deduction allowed under Section 812 (d). Under the final clause of Section 812 (d) the amount of charitable deduction can only be determined after the tax on the net taxable estate has been determined. Thus the final clause of Section 812 (d) requires an endless chain of computation and recomputation (compressed by the Commissioner into one algebraic formula). We find nothing in the language of the provision which would indicate as plaintiffs seem to contend, that the provision ceases to apply after the first recomputation is made. In fact, we find that whatever authority exists is to the contrary. Cf. Harrison v. Northern Trust Co., 1943, 317 U.S. 476, 63 S. Ct. 361, 87 L. Ed. 407. The objector's argument arises out of one of the peculiarities of the I.R.C., over which this court has no control.

The essence of the objector's argument is a complaint on the effects of the application of a graduated levy. This problem has been discussed in Jones Est., supra at 315, where an estate was required to pay additional tax because of the inclusion of inter vivos trust assets in the gross estate of the decedent. The court explained:

Under such circumstances, the argument is appealing that a pro rata apportionment requires the parties interested in the probate estate to pay tax due solely from the inclusion of trust assets in the taxable estate; but it is necessary to remember that all parties in interest in both the probate and trust estates are being subjected to tax liability for the same reason, that is, that decedent has died.

We note that the objector assumes that apportionment can occur before the tax is determined, most probably because such a chronology is beneficial to the charities. The Act makes no such provision and

implicitly directs apportionment following the determination of the tax.

Finally, the Attorney General argues that, according to the legislative history of Section 3704 (b) (4), that section should be applied to charities. Section 3704 (b) (4) provides:

(4) Inheritance or death tax effect. To the extent that property passing to or in trust for a surviving spouse does not constitute an allowable deduction solely by reason of an inheritance tax or other death tax imposed upon and deductible from such property, it shall not be included in the computation provided for in subsection (a) of this section, and to that extent no apportionment shall be made against such property. Ettirg's Est., 6 Fiduc. Rep. 518 (O.C. Div. Montg. 1957) directs that the above quoted section is not applicable to the apportionment of federal estate taxes to charities.

Objector also contests that the inclusion on the federal estate tax return of two gifts of $3,000 each to Robert H. Houser and Joan Rinker, arguing that I.R.C. Section 2035 operates to exclude from federal estate taxability gifts of $3,000 or less. At argument counsel for the accountants explained that each $3,000 gift reported represented the difference between the $3,000 exclusion permitted under I.R.C. Section 2035 and a total gift of $6,000, on which gift tax was never paid. Therefore, the includible gifts of $3,000 each to Robert H. Houser and Joan Rinker are properly subject to tax in the estate of this decedent.

The objections to the account are herewith dismissed.

Accountants have filed with the court satisfactions of award of legacies received by Robert H. Houser, Joan Houser (formerly Rinker), Bridie Reilly, and the Abington Township Police Pension Fund. The same are herewith approved.

Accountants modify the account as follows: Counsel fee set forth on page 24 of the account should be reduced from $125,000 to $101,000. A disbursement on May 30, 1979, on page 24 of the account for additional federal estate tax is reduced to $3,769.03 because of a reimbursement of $2,950.97 by the 1958 Trust. Likewise, the disbursement on May 30, 1979 on page 43 of the account for interest on the additional federal estate tax is reduced to $160.38 due to reimbursement of $124.99 by the 1958 Trust. The principal receipts per the inventory on page 3 of the account is reduced to $7,249,236.04 to reflect reimbursement on April 11, 1980, to the 1958 Trust of $7,363.33 of trust income accrued but not paid to the decedent as of her date of death and erroneously included in principal receipts contrary to Article Second (d) of the 1958 Trust. Finally, the accountants add an income disbursement on page 42 of the account in the amount of $1,030.72, representing interest to the 1958 Trust upon the principal amount erroneously retained by the estate. These modification to the account are herewith approved.

Accountants note that minor discrepancies exist between the recitation of the names of five of the charities in the will and the actual names of the charities. The will names the following charities: American Cancer Society, Philadelphia Division; Heart Association, Southeastern Pennsylvania Chapter; Salvation Army, Phila. Corps.; American Diabetic Association, Inc.; and National Association for the Prevention of Blindness. The accountants have submitted letters from the various charities and take the position that decedent intended that the charitable bequests pass to the following charities: The American Cancer Society, Philadelphia Division; American Heart Association, South-

eastern Pennsylvania Chapter; The Salvation Army; American Diabetes Association, Inc.; and National Society for the Prevention of Blindness, Inc. Distributions to the abovenamed charities are herewith approved.

Subject to distributions heretofore properly made and subject to the views expressed in this adjudication, the net ascertained balances of principal and income are awarded as set forth under the last paragraph of the petition for adjudication.

Power and authority are given the accountants to make the necessary assignments or transfers of the unconverted investment securities herein awarded in kind.

The account is confirmed, and it is hereby ordered and decreed that Philadelphia National Bank and Joseph S. Kleinbard, executors under the will of Louise S. Fischer, deceased, forthwith pay the distributions herein awarded.

## ORDER

And now, this September 18, 1980, this adjudication is confirmed nisi.

## EXCEPTIONS

TAXIS, *J.* December 10, 1980—Exceptions to the adjudication of the court dated September 18, 1980 were filed by the Kidney Foundation of Southeastern Pennsylvania, joined in by the Arthritis Foundation. The exceptions were argued before the court en banc on December 8, 1980.

After consideration of the arguments of counsel and a restudy of the briefs, the court is satisfied that nothing new or not dealt with by this court's adjudication of September 8, 1980 was brought to the attention of the court.

Therefore, all exceptions are dismissed and the adjudication nisi is now confirmed as the final adjudication of the court en banc.