T.C. Memo. 2009-61

UNITED STATES TAX COURT

ESTATE OF JOHN DAVID MCCOY, DECEASED, MICHELE MCCOY, PERSONAL
REPRESENTATIVE, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5521-07.                    Filed March 19, 2009.

Charles R. Brown, for petitioner.

Mark H. Howard, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GOEKE, Judge:  Respondent determined a deficiency of

$412,330 in the estate tax of the Estate of John David McCoy.

The issue to be decided is whether the Federal and State estate

taxes due from John David McCoy's (decedent) estate were required

to be allocated to property that would have otherwise passed to

the surviving spouse, thereby reducing the marital deduction under section 2056(b)(4)(A),[1] or whether the estate taxes should be allocated to the property included in decedent's taxable estate under Utah's equitable apportionment law.[2] We hold that Utah's equitable apportionment law applies and the marital deduction is not reduced.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated herein by this reference. Decedent, a resident of Utah, died on November 15, 2002. The estate's personal representative, Michele McCoy (Ms. McCoy), resided in Utah at the time the petition was filed.

Decedent left an executed last will and testament dated May 25, 1994 (the will). On May 25, 1994, decedent also executed a revocable living trust agreement for the John D. McCoy Trust (sometimes referred to as the original trust agreement). The

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]In the petition the estate argued that respondent erroneously denied a deduction of special attorney's fees paid in connection with the collection of estate taxes from beneficiaries of life insurance proceeds included in decedent's estate. The estate did not produce any evidence regarding this issue at trial and did not address the issue on brief. Accordingly, we deem the estate to have conceded this issue and sustain respondent's adjustment to the attorney's fees.

will and the original trust agreement stated that decedent's spouse was Roxanne McCoy. However, at the time of his death decedent was divorced from Roxanne McCoy and married to Ms. McCoy. The will was not updated to reflect that Ms. McCoy was decedent's spouse at the time of his death.

Decedent had earned a living in the printing industry, in real estate, and by leasing and operating the Heber, Utah, airport. Because he had dyslexia, decedent had trouble understanding and communicating with other people. Decedent and Ms. McCoy discussed estate issues during the course of their marriage but did not specifically discuss taxes or tax planning. In planning his affairs decedent generally tried to minimize the taxes he paid.

Shortly after decedent's death, Ms. McCoy learned that decedent had amended and restated the original trust agreement on December 5, 1999 (the restated trust agreement). Decedent told Ms. McCoy that he had been meeting with an attorney, Sara Henry, regarding his estate. Ms. Henry drafted the restated trust agreement and sent it to decedent for his review, and decedent signed the draft without Ms. McCoy's knowledge.

After decedent's death Ms. McCoy spoke with Ms. Henry regarding decedent's estate. After they discovered how complex the restated trust agreement was, Ms. Henry recommended that Ms. McCoy hire a second attorney because Ms. Henry did not feel

confident that she could prepare the estate tax return. Ms. McCoy followed Ms. Henry's recommendation and hired Tom Christensen, who has practiced in the area of estates and trusts for 32 years. Mr. Christensen prepared the estate tax return.

Article 2.1 of the will provides that all of decedent's tangible personal property, with several enumerated exceptions, would pass to his wife. Article 3.1 of the will, entitled "Disposition of Residue", provides:

> I give the residue of my estate to the trustee of the John D. McCoy Trust, created under the declaration of trust executed on May 25, 1994, by John D. McCoy as settlor and trustee. The trustee of that trust shall add the residue of my estate to the trust principal and hold, administer, and distribute the property in accordance with the provisions of that declaration of trust, including any amendments of that declaration of trust that have been made before or after execution of this will.

The original trust agreement provided that if decedent was survived by his wife, payment of estate taxes and other debts and expenses were to be charged to the nonmarital share of the trust.

However, the restated trust agreement is not as clear. Paragraph 5 states:

> 5. <u>TRUSTEE'S AUTHORITY TO PAY EXPENSES, DEBTS AND TAXES</u>
>
> The Trustee shall pay from the residue of the trust estate prior to any distributions provided for herein, all of the Settlor's debts, expenses of last illness, expenses of disposal of remains, all expenses of administration and trust termination, including attorneys' fees, and shall pay all estate taxes, if any, attributable to Settlor's entire taxable estate.

Paragraph 6 states in pertinent part:

> 6.   DISTRIBUTIONS UPON SETTLOR'S DEATH
>
>      A.   On the death of the Settlor and after all payments are made pursuant to paragraph 5 above, the Trustee shall distribute from the trust estate the following specific bequests: * * * [specific bequests to decedent's children, grandchildren, and spouse omitted]
>
> *      *      *      *      *      *      *
>
>      B.   Should Settlor be survived by MICHELE McCOY, the rest, residue and remainder of the trust estate shall remain in trust, to be held and distributed as follows: * * * [Distribution directions omitted.]

Paragraph 6.B. provided for distributions of income and principal solely for the benefit of Ms. McCoy.  Nowhere in the restated trust agreement or elsewhere is it stated expressly whether paragraph 5 was intended to govern both the method of paying the estate taxes and the manner in which the estate tax burden was to be borne by the beneficiaries.  Furthermore, the parties dispute whether the "residue of the trust estate" discussed in paragraph 5 of the restated trust agreement is the residue of decedent's estate referred to in article 3.1 of the will or the residue of the trust estate referred to in paragraph 6.B. of the restated trust agreement.

Certain other property, such as life insurance and property that decedent and Ms. McCoy jointly owned, passed outside the will and trust according to the legal terms of the property.

Decedent's estate filed a Form 706, United States Estate (and Generation-Skipping Transfer) Tax Return, on August 8, 2003. The estate claimed a marital deduction of $3,933,725, which was stated as the value of all of the assets of the gross estate except those assets specifically passing to beneficiaries other than Ms. McCoy. In determining the amount of estate tax, Mr. Christensen charged the specific bequest beneficiaries other than Ms. McCoy using equitable apportionment, generally by reducing their shares for estate taxes before the shares were distributed.

On December 13, 2006, respondent issued to decedent's estate a statutory notice of deficiency determining that the estate's marital deduction should be reduced by $837,399 to $3,096,326, resulting in a deficiency of $412,330. Respondent determined that decedent's estate improperly failed to reduce the value of the property passing to Ms. McCoy by the amount of estate taxes imposed on the estate. The Internal Revenue Service agent who conducted the audit determined that the estate taxes should have been paid out of the residue defined in paragraph 6.B. of the restated trust agreement.

OPINION

I. The Marital Deduction

A tax is imposed on the transfer of the taxable estate of every decedent who is a citizen or resident of the United States. Sec. 2001(a). In computing the value of the taxable estate, an

estate may generally deduct the value of any interest in property that passes from the decedent to the decedent's surviving spouse to the extent that that property is included in determining the value of the gross estate (marital deduction). However, the marital deduction is reduced by estate, succession, legacy, or inheritance taxes (estate taxes) allocable to the surviving spouse's interest. Sec. 2056(b)(4)(A). The issue in this case is whether the estate taxes owed on the transfer of decedent's estate are allocable to the portion of the estate passing to Ms. McCoy.

## II. Burden of Proof

Deductions are a matter of legislative grace, and a taxpayer generally bears the burden of proving entitlement to the deductions claimed. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). This rule applies to the marital deduction.

The parties dispute whether section 7491(a)(1) applies to shift the burden of proof to respondent. However, we need not decide whether decedent's estate has satisfied the requirements under section 7491(a)(2) to shift the burden of proof to respondent because no factual issue affects the outcome of this case.

## III. Utah Apportionment Law

State law governs the manner in which estate taxes are apportioned to the assets included in a decedent's gross estate.

Riggs v. Del Drago, 317 U.S. 95, 98 (1942); Estate of Sawyer v. Commissioner, 73 T.C. 1, 3 (1979).  In this case Utah law governs the apportionment of the estate's taxes.

Utah Code Ann. sec. 75-3-916 (1993) provides, in pertinent part:

> (1) As used in this section:
>
> *       *       *       *       *       *       *
>
> (d) "Person interested in the estate" means any person, including a personal representative, conservator, guardian, or trustee entitled to receive, or who has received, from a decedent while alive or by reason of the death of a decedent any property or interest in property included in the decedent's taxable estate.
>
> (2) Unless otherwise provided in the will or other dispositive instrument, the [estate] tax shall be apportioned among all persons interested in the estate. The apportionment shall be made in the proportion that the value of the interest of each person interested in the estate bears to the total value of the interests of all persons interested in the estate.  The values used in determining the tax shall be used for that purpose. If the decedent's will or other dispositive instrument directs a method of apportionment of tax different from the method described in this code, the method described in the will or other dispositive instrument controls. [Emphasis added.]

The apportionment described in this statute is referred to as "equitable apportionment".  Equitable apportionment is a rule that estate taxes should be charged only to the property that generates or creates the tax liability.  Estate of Brunetti v. Commissioner, T.C. Memo. 1988-517.  Most State estate tax apportionment statutes provide that this or a similar rule

applies unless a contrary intent is clearly expressed in the testator's will or other documents.  Id.  Accordingly, the issue we must decide is whether the will and the restated trust agreement direct a method of apportioning the estate taxes that is different from the method prescribed in the Utah code.[3]

IV.  Analysis

Respondent argues that the equitable apportionment statute does not apply because paragraph 5 of decedent's restated trust agreement clearly directs that the residue of the trust estate described in paragraph 6.B. of the restated trust agreement, which was created solely for the benefit of Ms. McCoy, should bear the burden of the estate taxes.  Respondent argues that there is no ambiguity to be resolved using Utah law.

While it is possible that the residue discussed in paragraph 5 of the restated trust agreement refers to the residue discussed in paragraph 6.B. of the restated trust agreement, we find that it is at least as likely that it refers to the residue of decedent's estate described in article 3.1 of the will, which includes all of the property passing by the will except for personal property specifically given to decedent's wife.  The fact that the payments referred to in paragraph 5 of the restated

_____

[3]The equitable apportionment statutes were added when Utah adopted the Uniform Probate Code in 1975.  Accordingly, cases decided before that time, such as Thayn v. United States, 386 F. Supp. 245 (D. Utah 1974), are not controlling.

trust agreement were intended to be made before the rest of the estate was divided according to paragraph 6 of the restated trust agreement supports this construction.  However, the fact that decedent uses the term "residue" in both article 3.1 of the will and paragraph 6.B. of the restated trust agreement creates an ambiguity that cannot be resolved by looking at these provisions alone.

Furthermore, it is not clear whether decedent intended these provisions to govern the allocation of the taxes at all or whether he merely intended them to be the source of the estate tax payments.  The restated trust agreement states that "The Trustee shall pay <u>from</u> the residue of the trust estate prior to any distributions provided for herein , * * * all estate taxes, if any, attributable to Settlor's entire taxable estate." (Emphasis added.)  While decedent may have intended the word "from" to indicate that the taxes were to be both charged to and paid out of the residue, this intention is not as clear as the statement in the original trust agreement that "If the settlor is survived by his wife, payments under this section shall be charged to the Nonmarital Share".  The restated trust agreement provides no similar clear guidance as to whether the residue of the restated trust agreement (whether the residue described in the will or in paragraph 6.B. of the restated trust agreement) is also to bear the burden of the estate tax.  While it is possible

that, as respondent argues, decedent intended for the residue of the trust estate to both be the source of the estate tax payment and bear the burden of the estate tax, we find that this intent is not clear.

The Utah Supreme Court, in In re Estate of Huffaker, 641 P.2d 120, 121 (Utah 1982), directed:

> there is a strong policy in favor of the equitable allocation of the tax burden provided in the statute prescribing apportionment, and that a direction to the contrary in a will or other dispositive instrument must be expressed in terms that are specific, clear, and not susceptible of reasonable contrary interpretation.

In support of this statement the Utah Supreme Court cited, and therefore implicitly approved of, cases from a number of other States where the rule is that if there is any ambiguity as to how the estate taxes are to be apportioned, the ambiguity should be resolved in favor of apportionment. Bolstad v. Wells Fargo Bank Am. Trust Co. (In re Estate of Armstrong), 366 P.2d 490, 494 (Cal. 1961) ("But running through the cases generally is the thought that apportionment of the taxes is the general rule to which exception is to be made only when there is a clear an unambiguous direction to the contrary. Ambiguities are to be resolved in favor of apportionment."); Jackson v. Hubbard (Estate of Carley), 153 Cal. Rptr. 528, 531 (Ct. App. 1979) (finding unanimous agreement in the courts that equitable apportionment applies unless "there is a clear and unambiguous direction to the contrary either in the will or the trust agreement, and * * * any

ambiguity appearing in the instrument must be resolved in favor of apportionment"); New York Trust Co. v. Doubleday, 128 A.2d 192 (Conn. 1956) (discussed below); Hunter v. Manhan, 580 P.2d 474 (Nev. 1978) (applying proration in the absence of a clause prohibiting it); In re Estate of Erieg, 267 A.2d 841 (Pa. 1970) (discussed below); Zerbe v. Eggleston (In re Estate of Hilliar), 498 P.2d 1237, 1239 (Wyo. 1972) ("a directive against apportionment should be expressed in clear and unambiguous language."); see also Hamilton v. Hamilton, 869 P.2d 971, 978 (Utah Ct. App. 1994) (quoting In re Estate of Huffaker, supra at 121, and stating that equitable apportionment will not apply "only if there is specific and clear language in * * * [the testator's] will directing that the tax burden should be otherwise divided.").

We particularly note that the Utah Supreme Court cited New York Trust Co. v. Doubleday, supra at 192, which presents a situation very similar to ours.  In that case the testator's will made certain legacies to his widow and other persons and then left his remaining assets in a residuary estate.  Id. at 193. The residuary estate was to be divided into five parts, one part to go to the testator's widow and the other four to go to his children and grandchildren.  Id.  The last paragraph of article twelfth of the will provided:

> "I direct my executors to pay from my residuary estate
> all estate, inheritance, transfer, succession and other

> death taxes or other taxes in the general nature
> thereof which may be payable with respect to any
> property included in my gross taxable estate * * *"

Id. The parties agreed that under this clause all estate and succession taxes were payable from the residuary estate, including taxes on the specific legacies not included in the residuary estate. However, the parties disputed how the actual Federal estate tax should be borne within the residuary estate. Id.

The children argued that the ninth article of the will governed not only payment of the taxes but also how they should be borne. They argued that the beneficiaries of each of the five parts should bear one-fifth of the total tax, including the widow, despite the fact that the widow's share was exempt from Federal estate tax. Id. at 196. The widow argued that Connecticut's proration statute applied. Like the Utah statute, it provides that in the absence of a directive in the will to the contrary, Federal and State estate taxes are equitably prorated among the beneficiaries in proportion to the values of their gifts, except that those whose legacies do not create or add to the tax burden are not required to bear it. Id. at 196-197 (citing Jerome v. Jerome, 93 A.2d 139, 142 (Conn. 1952)).

The court found that the ninth article of the will only directed the payment of the taxes and did not settle the question of whether the residuary beneficiaries should bear the taxes

equally or whether proration should apply: "The directive in the will that all estate taxes be paid from the residue is not a directive against the prorating of estate taxes among residuary gifts." New York Trust Co. v. Doubleday, supra at 196. The court found that some doubt existed as to the testator's intention and the testator failed to speak clearly on the question of proration. Id. Accordingly, the court found that the will did not override the usual proration rule and that the four nonmarital shares were required to bear all of the estate tax burden. Id. at 196-197.

Similarly, in In re Estate of Erieg, supra at 842, also cited with approval by the Utah Supreme Court, the testator left all of his tangible personal property to his wife, then gave 67 percent of the residue of his estate to his widow and the remaining 33 percent to his niece. The testator included a clause that stated: "All taxes and interest and penalties thereon payable by reason of my death with respect to property comprising my gross taxable estate, whether or not passing under this Will, shall be paid from my residuary estate." Id. The parties disagreed as to whether this meant that the widow and the niece should each bear a portion of the estate taxes or whether Pennsylvania's proration statute, similar to Connecticut's proration statute and Utah's equitable apportionment statute, should apply. Id. at 843. The court agreed with the executor

that the tax payment clause cited above did not trump the usual

proration rules:

> We do not find that the directive in ITEM IV that "[a]ll taxes * * * shall be paid from my residuary estate," provides the explicit expression of a contrary intent necessary to render the statutory presumption inapplicable.  Both the executor's and Jane Laher's [the niece] proposed methods of distribution would be consistent with the direction that all taxes be paid from the residue.  The question in this case is not whether the taxes are to be deducted from the residue, but from whose share of the residue they should be taken.  And ITEM IV can hardly be said to contain any guidance on this point.

Id. at 845.

Like the testators in these cases, decedent specified that

the residue was to be the source of the payment of the estate

taxes but failed to specify how the taxes were to be apportioned

between the beneficiaries of the residue.  Furthermore, decedent

did not even clearly define what he meant by "residue".

Respondent argues that the wording of the restated trust

agreement is similar to that found in cases such as Estate of

Fine v. Commissioner, 90 T.C. 1068 (1988), affd. without

published opinion 885 F.2d 879 (11th Cir. 1989), Estate of Miller

v. Commissioner, T.C. Memo. 1998-416, affd. without published

opinion 209 F.3d 720 (5th Cir. 2000), Estate of Lewis v.

Commissioner, T.C. Memo. 1995-168, and Estate of Lurie v.

Commissioner, T.C. Memo. 2004-19, affd. 425 F.3d 1021 (7th Cir.

2005), in which we found that equitable apportionment did not

apply because the testators' wills unambiguously overrode the

apportionment rules of those States (Virginia, Texas, New Hampshire, and Illinois, respectively).  In <u>Estate of Fine v. Commissioner</u>, <u>supra</u> at 1070, 1074-1076, the Court found that the testator specifically directed that the Virginia apportionment statute would not apply because the testator's will specifically stated:  "'all such taxes [including estate taxes] are to be paid out of the residuary estate <u>without apportionment</u>'."  (Emphasis added.)  Similarly, in <u>Estate of Miller v. Commissioner</u>, <u>supra</u>, the testator's will stated:  "'[estate taxes] shall be <u>borne</u> by my residuary estate.  Such payment shall be made as an expense of administration <u>without apportionment</u> and without contribution or reimbursement from anyone whomsoever'".  (Emphasis added.)  Also similarly, in <u>Estate of Lewis v. Commissioner</u>, <u>supra</u>, the testator's will stated:  "estate taxes * * * shall be paid out of the residue of my estate <u>without apportionment</u> and with <u>no right of reimbursement</u> from any recipient of any such property'".  (Emphasis added.)

In <u>Estate of Lurie v. Commissioner</u>, <u>supra</u>, the Court found that Illinois equitable apportionment law did not apply and the testator intended for estate taxes to be paid from the residuary probate estate or a revocable trust (which would benefit the surviving spouse) but not from other "notice" trusts (which would benefit other beneficiaries).  The testator's will provided that estate taxes were to be paid from the testator's residuary

estate.  If the testator's estate was insufficient, the revocable trust instrument provided that the taxes should be "charged" against the principal of the trust and that such payments should be made "without reimbursement from the Grantor's Executor or Administrator, from any beneficiary of insurance upon the Grantor's life, or from any other person".

We find that the facts of the case before us more closely resemble the facts set forth in New York Trust Co. v. Doubleday, 128 A.2d 192 (Conn. 1956), and In re Estate of Erieq, 267 A.2d 841 (Pa. 1970).  Neither the will nor the restated trust agreement contains the "without apportionment" language that the Court found significant in the first three cases that respondent cited.  Furthermore, neither the will nor the restated trust agreement specify whether the estate taxes should be "borne by" or "charged against" the residue (whichever residue that may be), or whether the residue should merely be the source of payment, potentially entitled to reimbursement from the other beneficiaries.

While the testator's trust agreement in Estate of Lurie v. Commissioner, supra, did not clearly specify whether apportionment should apply, the Court found that such a specific direction was not necessary to opt out of Illinois equitable apportionment law because the Illinois apportionment law applies only "if the decedent provided no direction * * * about payment

of Federal estate tax".  <u>Id.</u> (emphasis added) (citing <u>Fleming v. Gowling (In re Estate of Gowling)</u>, 411 N.E.2d 266, 269 (Ill. 1980), and <u>Roe v. Estate of Farrell</u>, 372 N.E.2d 662, 665 (Ill. 1978)).  By contrast, given the Utah Supreme Court's approval of <u>New York Trust Co.</u> and <u>In re Estate of Erieg</u>, under Utah law a payment clause alone does not meet the standard set out in <u>In re Estate of Huffaker</u>, 641 P.2d at 121, that a direction to opt out of Utah's equitable apportionment statute "must be expressed in terms that are specific, clear, and not susceptible of reasonable contrary interpretation."  See also <u>Estate of Brunetti v. Commissioner</u>, T.C. Memo. 1988-517 (applying the California equitable apportionment statute even though the testator's will provided that estate taxes were to be paid out of the residue of the testator's estate "without apportionment" because of the strong presumption that equitable apportionment applies absent a clear and unambiguous direction to the contrary).  Because the restated trust agreement does not specify how the estate taxes should be apportioned and does not specify which residue those taxes should be paid from, we find that equitable apportionment applies.[4]

---

[4]The parties dispute whether we should consider extrinsic evidence.  Respondent argues that extrinsic evidence is not necessary because the will and the restated trust agreement unambiguously provide that the estate taxes are to be borne by Ms. McCoy's share of the estate.  The estate argues that under Utah law extrinsic evidence is admissible to show that a

(continued...)

Accordingly, we need not address the parties' alternative arguments.

On the basis of the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.

---

[4](...continued)
provision in a document is ambiguous.  See <u>Gillmor v. Macey</u>, 121 P.3d 57, 70 (Utah Ct. App. 2005).  We need not address these arguments because we find the will and the restated trust agreement fail on their face to direct the apportionment of estate taxes, and the little extrinsic evidence that is available supports our conclusion that decedent did not intend to direct the apportionment of estate taxes in his testamentary documents. The facts that (1) Ms. Henry was not experienced in the area of estate tax planning, (2) decedent had no background in estate tax planning, (3) decedent had difficulty communicating with and understanding others, and (4) decedent generally tried to minimize the taxes he paid but did not discuss tax matters with his wife when discussing estate planning, all indicate that decedent most likely gave no consideration to which portion of his estate would bear the burden of the estate taxes under the restated trust agreement.  If he had been aware of the issue, it appears he most likely would have directed the apportionment of the estate taxes as he did in the original trust agreement.