388 A.2d 1077

In re ESTATE of Harry S. FLEISHMAN, Deceased.

In re Trust for Mildred S. FLEISHMAN.

Appeal of Harry S. FLEISHMAN, Jr., Foster S. Goldman and Foster S. Goldman, Jr.

Supreme Court of Pennsylvania.

Argued March 9, 1978.

Decided July 14, 1978.

570

Bernard Eisen, Foster S. Goldman, Jr., Berkman, Ruslander, Pohl, Lieber & Engel, Pittsburgh, for appellant.

Robert G. Lovett, Pittsburgh, for Betty J. Cornell, beneficiary under Will of Mildred S. Fleishman.

S. Allen Vatz, Pittsburgh, for Mellon Bank, N.A., trustee under Will of Harry S. Fleishman.

Abraham Pervin, Pittsburgh, for Mellon Bank, N.A., trustee under Will of Mildred S. Fleishman.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

In this appeal,[1] we affirm the decree of the Orphans' Court Division of the Court of Common Pleas of Allegheny County directing testator Harry Fleishman's residuary estate to pay additional inheritance tax owed the Commonwealth.

Harry Fleishman died testate in 1955. In Article THIRTEENTH of his will, Testator established a marital trust for the benefit of his wife Mildred:

"THIRTEENTH: If my wife, MILDRED S. FLEISHMAN, survives me or is presumed to have survived me, as hereinafter provided, I give, devise and bequeath to MELLON NATIONAL BANK AND TRUST COMPANY [(Mellon Bank)], IN TRUST, an amount equal to one-third (⅓) the value of my adjusted gross estate as finally determined for Federal estate tax purposes. This amount, undiminished and unaffected by any estate, inheritance, transfer, or succession taxes, shall be paid by my executors to the said Trustee, either in cash or in kind, or partly in cash and partly in kind, at the values finally determined

1. We hear this appeal pursuant to the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 202(3), 17 P.S. § 211.202(3) (Supp.1978).

for Federal estate tax purposes, to be held upon the terms and conditions hereinafter set forth."

Testator directed Mellon Bank to pay Mildred income quarterly for life and authorized it, in its discretion, to invade principal to provide adequately for her. Testator further directed Mellon Bank to pay over principal upon Mildred's death to whomever Mildred in her will appointed.

In Article FIFTH, Testator bequeathed various items of personal property to Mildred. In other articles, testator bequeathed personal property and sums of cash, both outright and in trust, to named relatives. Article FIFTEENTH disposed of the residue of testator's estate.[2]

In 1956, the Commonwealth imposed an inheritance tax of $11,000 on the value of testator's bequests and reserved the right to assess additional tax if persons other than testator's "lineal heirs" received remainder interests in the bequests.[3] Testator's executors paid the inheritance tax from his residuary estate.

Testator's wife, Mildred, died testate in 1974. In her will, Mildred appointed the corpus of the marital trust to appellee Betty Cornell (her daughter by previous marriage) and grandchildren (also by previous marriage). The Commonwealth filed a second inheritance tax claim to collect the

---

**2.** Testator divided the residue of his estate in half, creating two trusts. Appellants Harry Fleishman, Jr., Foster Goldman, and Foster Goldman, Jr. are beneficiaries of these residuary trusts.

**3.** The Act of June 20, 1919, P.L. 521, § 2, as amended, 72 P.S. § 2302 (1964), authorizes the Commonwealth to impose two rates of inheritance tax upon decedents' bequests. The Act empowers the Commonwealth to collect tax at a rate of two per cent on bequests to, or for the benefit of, certain of decedents' relatives, often referred to as "lineal heirs," and a tax of fifteen per cent on bequests to persons outside this class, commonly known as "collateral heirs." The Inheritance and Estate Tax Act of 1961, Act of June 15, 1961, P.L. 373, §§ 101 et seq., 72 P.S. §§ 2485–101 et seq. (1964), which applies where decedents die on or after January 1, 1962, id., § 103, 72 P.S. § 2485–103, see infra note 8, preserves this distinction. Id., §§ 403 & 404, 72 P.S. §§ 2485–403 & 2485–404. Effective December 29, 1967, the Commonwealth is authorized to collect a six per cent rate of tax on bequests to, or for the use of, lineal heirs. Act of December 29, 1967, P.L. 915, § 1, amending Inheritance and Estate Tax Act of 1961, § 403, 72 P.S. § 2485–403 (Supp.1978).

additional tax of $10,000 owed because of Mildred's appointment to heirs "collateral" to testator.[4]

Article FOURTEENTH of testator Harry Fleishman's will provided:

"FOURTEENTH: I direct my Executors, hereinafter named, to pay out of the principal of my residuary estate, passing under Article Fifteenth hereof, all estate, inheritance, transfer and succession taxes, imposed upon or payable with respect to any property or interest in property which may be included as part of my estate for the purposes of said taxes, at such time and in such manner as my Executors in their sole discretion shall determine, and no part thereof shall be collected from or pro-rated among any persons receiving or in possession of, or receiving the benefit of, the property or interest in property taxed; it being my particular intention that the bequest to my wife under Article Fifth hereof and the bequest and devise for the benefit of my wife under Article Thirteenth hereof shall be free of all such taxes. In the absolute discretion of my Executors, such taxes may be paid immediately, or the payment of taxes on future or remainder interests under the residuary clause hereof may be postponed until the time possession thereof accrues to the beneficiaries, in which event such taxes shall be paid out of the principal of the trust subject thereto."

Upon Mellon Bank's Petition For Distribution of testator's marital trust, the orphans' court concluded that this tax

---

4. The Amendatory Act of 1929, Act of May 16, 1929, P.L. 1795, § 1, amending Act of June 20, 1919, § 1, 72 P.S. § 2301(d) (1964), provides that property transferred through exercise of a power of appointment is to "be taxed as of the estate of the donor, notwithstanding any blending of such property with the property of the donee." Thus, in determining the applicable rate of inheritance tax on property so transferred, see supra note 3, an appointee's relation to the donor, rather than donee, is controlling. E. g., *Powell Estate*, 417 Pa. 164, 207 A.2d 857 (1965). Sections 309 and 408 of the Inheritance and Estate Tax Act of 1961, 72 P.S. §§ 2485–309 & 2485–408, adopt this rule. See generally Grossman & Smith, Pennsylvania Inheritance & Estate Tax §§ 309–2 & 309–3 (rev. ed. 1971). No dispute exists concerning the Commonwealth's determination that Mildred appointed to "collateral heirs."

clause manifests testator's intent that his residuary estate, not Mildred's, pay the additional tax. The orphans' court decreed accordingly and appellants Harry Fleishman, Jr., Foster Goldman, and Foster Goldman, Jr., beneficiaries of testator's residuary trusts,[5] appeal.[6]

**5.** See supra note 2.

**6.** Relying upon Section 741 of the Inheritance and Estate Tax Act of 1961, 72 P.S. § 2485–741, which provides that fiduciaries are primarily responsible for payment of transfer taxes on property of which they are in charge, appellants argue that Mellon Bank, in its Petition For Distribution, lacked standing to raise the issue of who should pay additional inheritance tax. Appellants contend that, under *Kleinhans Estate*, 454 Pa. 539, 312 A.2d 366 (1973), the Commonwealth is entitled to collect inheritance tax from the assets of the marital trust and therefore Mellon Bank's sole responsibility in this matter is to pay the tax. According to appellants, only after Mellon Bank fulfills its duty to pay inheritance tax may it seek reimbursement from those it believes are obligated to pay.

In *Kleinhans*, the testator established two residuary trusts funded equally, one for the benefit of his wife for life, principal to pass as his wife in her will appointed, the other for the benefit of his sister for life, remainder to the testator's grandsons. The testator's sister predeceased testator and thus the executors distributed outright the principal of the second trust to the testator's grandsons. The testator's wife appointed the principal of the trust in favor of heirs collateral to testator. Accordingly, the Commonwealth sought inheritance tax, at a rate of fifteen per cent, on the property transferred through the wife's appointment. Over the argument of the wife's estate that the testator's will directed all taxes to be paid from his residuary estate and thus testator's grandsons, residuary beneficiaries, should share the burden of taxation, and the contention that Section 718(c) of the Inheritance and Estate Tax Act of 1961, 72 P.S. § 2485–718(c), limited the Commonwealth's right to collect the full inheritance tax from a single trust, this Court concluded that the trustee of the residuary trust was obliged to pay the full sum of inheritance tax from the marital trust. We stated: "If [the wife's estate's] interpretation of section 718(c) were to prevail, the Commonwealth would have to collect the other half of the tax from the remainder beneficiaries of [the second trust], who received their legacy prior to the termination of the widow's life tenancy. We conclude that Section 718(c) does not justify such an unsound result." 454 Pa. at 543, 312 A.2d at 369.

We find *Kleinhans* inapposite. No dispute exists here concerning the Commonwealth's right to collect all the additional inheritance tax owed. Rather, Mellon Bank requested the orphans' court to direct a proper distribution. This distribution could be made only if Mellon Bank knew whether, and to what extent, Mildred's estate bore responsibility for taxes owed because of Mildred's appointment. Rather than distribute the assets of her estate and then attempt, in

Appellants argue that Article FOURTEENTH of testator Harry Fleishman's will, directing his executors to pay "all . . . inheritance . . . taxes" out of his residuary estate and stating his "particular intention" that the "bequest and devise for the benefit of [his] wife . . . shall be free of all such taxes," is not sufficiently explicit to justify the conclusion that testator intended his residuary estate to bear the burden of additional inheritance tax owed in the event Mildred appointed to collateral heirs. They contend that, had testator wished his children and grandchildren, residuary legatees, to pay taxes on property Mildred appointed to persons unrelated to testator, he would have expressly so provided. Accordingly, relying upon the "source of payment" section of the Inheritance and Estate Tax Act of 1961,[7] § 718(c), 72 P.S. § 2485–718(c), which places the "ultimate liability for inheritance tax . . . upon each transferee" where no contrary intent appears in "the will or other instrument of transfer," appellants argue that the residuary estate should be relieved of tax liability.[8]

While the law presumes that testators most likely want transferees of bequests to bear attendant inheritance tax burdens, testators are free to allocate the burdens otherwise. E. g., *Lander Estate*, 416 Pa. 605, 207 A.2d 753 (1965); *Horn Estate*, 351 Pa. 131, 40 A.2d 471 (1945); accord, Inheri-

subsequent proceedings, to recover a share from beneficiaries under her will, Mellon Bank first sought to dispose of the important question of tax burden. The orphans' court has authority to resolve this question before distribution. 20 Pa.C.S.A. § 762 (1975) (authorizing orphans' courts to decide or dispose of "any question relating to the administration or distribution of an estate or trust and exercise any of its powers in respect thereof upon the filing of an account or in any other appropriate proceeding"). If we were to hold Mellon Bank acted improperly, we would discourage the prompt and orderly administration of estates, leaving all parties uncertain of their rights and obligations concerning transfer taxes.

7. Act of June 15, 1961, P.L. 373.

8. Appellants err in assuming the Inheritance and Estate Tax Act of 1961 applies. Section 103 of the Act, 72 P.S. § 2485–103, fixes January 1, 1962, as the effective date of the Act, repealing or displacing existing law only insofar as it would have applied to cases where decedents died on or after that date. Because testator died in 1955, law existing before the effective date of the Act controls.

tance and Estate Tax Act of 1961, § 718, 72 P.S. § 2485–718 (authorizing testators dying on or after January 1, 1962, to allocate tax burdens in manner other than that prescribed by statutory presumptions); *Kleinhans Estate*, 454 Pa. 539, 312 A.2d 366 (1973) (interpreting § 718(c) of Act); *Zellefrow Estate*, 450 Pa. 302, 299 A.2d 248 (1973) (interpreting § 718(a) of Act); cf. *Neamand Estate*, 456 Pa. 22, 318 A.2d 730 (1974) (same rule for apportionment of estate taxes); see generally II Casner, Estate Planning Ch. XIX Part 4 (3d ed. 1961). A testator's intent to allocate inheritance tax in a particular fashion "must be unambiguous and open to no other interpretation." *Noteboom Estate*, 473 Pa. 32, 38, 373 A.2d 737, 739 (1977) (interpreting tax clause in inter vivos deed of trust), quoting *Erieg Estate*, 439 Pa. 550, 556, 267 A.2d 841, 845 (1970); accord, e. g., *Lander Estate*, supra (citing cases).

Article FOURTEENTH of testator's will unambiguously demonstrates testator intended his residuary estate to bear the burden of all inheritance tax owed the Commonwealth, including the additional taxes at issue here. Testator directed that the residuary estate bear the burden of "all" taxes "imposed upon" "any property or interest in property which may be included as part of [his] estate" for purposes of taxation, which included the property Mildred's appointment transferred. See supra note 4. Any doubt that "any property" included property transferred through Mildred's exercise is resolved when it is considered that testator authorized his executors to pay the taxes "at such time and in such manner as [they] in their sole discretion shall determine." Thus, testator contemplated that certain transfer taxes would be payable both at and after death. Under applicable inheritance tax laws, these transfer taxes included those on property transferred through powers of appointment. Act of June 20, 1919, P.S. 521, § 3, 72 P.S. § 2304 (1964); *Carver Estate*, 422 Pa. 609, 222 A.2d 882 (1966).

Moreover, testator's tax clause contains two express provisions exonerating from taxation transferred property sub-

ject to transfer tax. First, testator directed that "no part [of the tax payments] shall be collected from or pro-rated among any persons receiving or in possession of, or receiving the benefit of the property or interest in property taxed." Further, with unmistakeable clarity, testator stated his "particular intention that the bequest to [his] wife under Article Fifth hereof [(bequeathing Mildred personal property)] and the bequest and devise for the benefit of [Mildred] under Article Thirteenth hereof [(creating the marital trust and power of appointment)] shall be free of all such taxes." Testator's wish that "any persons receiving the benefit of property" subject to tax should not bear the tax burden surely encompassed Mildred's appointees, for they gained through the appointment. Also, knowing Mildred would benefit from not only her lifetime interest in the trust but also the general power of appointment, testator used the terms "for the benefit of my wife," language unambiguously broad enough to relieve the entire transfer to Mildred of the burden of inheritance tax.

That the burden of additional inheritance tax falls upon testator's relatives, while "collateral heirs" enjoy the transferred property free of tax, does not alter testator's express intention that his residuary estate bear the tax burden. In clear, absolute, and definite terms, testator directed the source of payment of "all taxes" on "any property" "which may be included as part of [his] estate" and "no part thereof shall be collected from or pro-rated among any persons receiving or in possession of, or receiving the benefit of, the property or interest in property taxed." His intent must prevail.[9]

9. *Erieg Estate*, 439 Pa. 550, 267 A.2d 841 (1970), upon which appellants rely, is not to the contrary. There, testator directed that all taxes payable because of his death "shall be paid from [his] residuary estate." We found the testator's tax clause insufficient proof of his intent to disturb the relevant statutory presumption that testators wish estate taxes to be pro-rated among legatees. Here, however, testator's intent to alter the relevant presumption of tax burden is manifested with unquestioned clarity.

Appellants also argue that the orphans' court erred in relying upon Section 408 of the Inheritance and Estate Tax Act of 1961, 72 P.S.

■   Appellants next contend that, notwithstanding any of the language in the tax clause of Harry Fleishman's will, his wife, in the tax clause of her will, assumed responsibility for inheritance taxes payable because of her appointment to heirs "collateral" to testator. Appellants have not cited, nor can we find, any decision of this Court authorizing the donee of a power of appointment to alter a donor-testator's express direction that his residuary estate pay "all taxes." Though the donee exercises a power and appointees benefit by its exercise, the donor's estate is the subject of tax, see supra note 4, and therefore it is the donor's intent which controls. See text supra; Inheritance and Estate Tax Act of 1961, § 718, 72 P.S. § 2485–718 (inquiry in determining where burden of inheritance tax falls first focuses on "will" or "other instrument of transfer"). Indeed, to accept appellants' contrary contention is to ignore testator's careful testamentary plan.[10]

Decree affirmed. Each party pay own costs.

§ 2485–408, which provides that "[p]roperty subject to a power of appointment . . . shall be taxed only as part of the estate of the donor," as dispositive of the source of inheritance tax payment. Appellants correctly state that this provision and Section 309 of the Act, 72 P.S. § 2485–309, establish the taxable event, rather than source of payment. We do not, however, read the opinion of the orphans' court to rest its decree upon Section 408. The orphans' court relied upon the express language of testator's will in reaching its correct result.

10. Appellants further argue that the orphans' court erroneously ruled inadmissible testimony of the scrivener of Mildred's tax clause. Because we conclude Mildred's tax clause cannot alter her husband's express testamentary intent, we do not review this ruling of the orphans' court.