570 A.2d 1074

In re ESTATE OF Sara M. PYLE, Deceased.

**Appeal of Melanie G. BANNAN.**

Superior Court of Pennsylvania.

Argued Nov. 29, 1989.

Filed March 2, 1990.

Frank J. Williams, Paoli, for appellant.

James L. Head, West Chester, for appellee.

Charles E. Donohue, Philadelphia, for Com., participating party.

William H. Mitman, West Chester, for Charles Moran, participating party.

Grahame P. Richards, Jr., Philadelphia, for American Heart Ass'n, participating party.

Before BROSKY, BECK and HOFFMAN, JJ.

BROSKY, Judge.

This is an appeal from a final decree entered by the Orphans' Court which confirmed the first and final account filed by the executors.

The following issues have been presented for review: (1) whether the trial court erred in concluding that the language in the will was insufficient to alter the statutory scheme of taxation, and if so, whether the trial court erred in affirming the account where the executors deducted the remaining Pennsylvania inheritance taxes and the entire and Federal estate taxes due only from appellant's share, contrary to the intent expressed by the testatrix in her will; and (2) whether the trial court erred in disallowing the

scrivener's testimony which would have been relevant in construing the testatrix's intent. For the reasons set forth below, we affirm the decision of the trial court.

Sara M. Pyle died testate on December 29, 1986. Her will was probated on January 9, 1987 and letters testamentary were issued on the same date to Walter Carlin, Jr., Doris Carlin and Thomas Hendricks as the executors of her estate. In clause 11 of her will, the testatrix provided that the residue of her estate was to be divided into equal shares and distributed to Melanie G. Bannan, the American Heart Association and the Charles Moran American Legion Post, respectively. The will further provided in clause 12 that all estate and inheritance taxes were to be paid out of the residuary portion of the estate.

Appellant filed a petition requesting that the executors be directed to file an account; the petition was granted and the first and final account was filed on May 25, 1988. In the account, the executors paid the Pennsylvania Inheritance Tax for each pre-residuary specific bequest from the residuary clause, divided the amount remaining in the residuary portion into three equal shares, and then deducted from Melanie Bannan's share the Pennsylvania Inheritance Tax due on that share as well as the Federal Estate Tax due on the entire estate. Objections to the account were thereafter filed. A decree nisi was issued on October 20, 1988 which directed the executors to amend certain portions of the account; in all other respects, however, the account was confirmed. Appellant filed exceptions to the account which were denied by final decree entered on March 15, 1989. The appeal to this court was timely filed on March 23, 1989.

The dispute in this case arises from the interpretation accorded clauses 11 and 12 in the will which state:

*ELEVENTH:* All the rest, residue and remainder of my estate, I divide into three equal shares, one of which I give, devise and bequeath unto MELANIE G. BANNAN, *absolutely,* and I give, divise [sic] another equal share unto the SOUTHEASTERN CHAPTER of the AMERICAN HEART ASSOCIATION, which is now located at 37

West Market Street, West Chester, Pennsylvania, and the third equal share unto the CHARLES MORAN AMERICAN LEGION POST, of Downingtown, Pennsylvania, in memory of my brother-in-law, Joseph E. Miller. (Emphasis added.)

*TWELFTH:* I direct that all estate and inheritance taxes on any property passing under this Will, or by reason of my death, shall be paid out of the residuary portion of my estate, and that no beneficiary of mine shall be called upon or required to reimburse my Executors.

The trial court concluded that the language contained in the above clauses was not specific enough to overcome the presumption that the statutory scheme regarding allocation of taxes should be followed. We agree.

Before attempting to interpret these provisions, a review of the relevant statutory authority is necessary. To further simplify our discussion, we will first discuss estate taxes. 20 Pa.C.S.A. § 3704 requires that "[t]he Pennsylvania estate tax shall be apportioned in the same manner as the Federal estate tax." Thus, we must turn to 20 Pa.C.S.A. § 3701 which controls the apportionment of federal estate taxes and provides:

A testator ... may direct how the Federal estate tax ... due because of his death, including interest and penalties, shall be apportioned ... Any such direction shall take precedence over the provisions of this chapter insofar as the direction provides for the payment of tax or any part thereof from property the disposition of which can be controlled by the instrument containing the direction.

In the absence of direction by the testator, 20 Pa.C.S.A. § 3702(a) requires the Federal estate taxes to be equitably apportioned among all parties interested in property includible in the gross estate. There are exceptions to this general rule, however, as set forth in § 3702(b)(1) below:

No Federal estate tax shall be apportioned against a beneficiary of any pre-residuary gift made by will. Any Federal estate tax attributable thereto shall be paid entirely from the residue of the estate and charged in the

same manner as a general administration expense of the estate except that when a portion of the residue of the estate is allowable as a deduction for Federal estate tax purposes the tax shall be paid to the extent possible from the portion of the residue which is not so allowable.

Consequently, we must determine whether the testatrix's will adequately directs how the Federal estate tax is to be apportioned, if the statutory scheme is to be altered. As this court has previously observed:

> The polestar in the interpretation of any will is the intent of the testator which must be gathered from the entire will.... 'To ascertain this intent, a court examines the words of the instrument and, if necessary, the scheme of distribution, the circumstances surrounding the execution of the will and other facts bearing on the question.' ...
> In the ascertainment of a testator's intent, a clause in a will must not be read in isolation but rather in the context in which it appears.... Further, in interpreting wills 'the law will impute to the testator's words such meaning as under all the circumstances will conform to his probable intention and be most agreeable to reason and justice.'
> ...

*Estate of McKenna,* 340 Pa.Super. 105, 109–110, 489 A.2d 862, 865 (1985) (citations omitted) (emphasis added). Accordingly, we must construe *both* clauses of the will together, in order to glean the testatrix's intent.

 As most wills are seldom alike, it is necessary to interpret each will according to its own peculiar terms. *In re Wahr's Estate,* 370 Pa. 382, 386, 88 A.2d 417, 419 (1952) (dissenting opinion, Bell and Musmanno, JJ.) As a result, there are comparatively few cases which have interpreted clauses of this type, and those which have done so demonstrate the difficulty in finding a clear expression of intent. For example, in *Wahr, supra,* the majority held that because the will was silent as to the payment of taxes, the clause directing that the residuary estate be divided into equal shares, standing alone, was insufficient to indicate an intent to apportion taxes contrary to the statute. In the

case of *In re Audenried's Estate*, 376 Pa. 31, 101 A.2d 721 (1954), however, the same court held that the will did evidence a contrary intent because the testatrix specified that the taxes on *all* legacies were to be paid from the residuary estate (emphasis added).

█ The Pennsylvania Supreme Court again addressed this question in *In re Estate of Erieg*, 439 Pa. 550, 267 A.2d 841 (1970) and found that the testator did not express a clear intent where the will merely provided for the payment of all taxes from the residuary estate. This issue was again discussed in *In re Estate of Fleishman*, 479 Pa. 569, 388 A.2d 1077 (1978) where the will specifically directed the executors to pay all taxes out of the principal of the residuary estate, but further provided that "no part [of the taxes] ... shall be pro-rated among any persons receiving ... the property ... taxed", *Fleishman*, 479 Pa. at 573, 388 A.2d at 1079. Although the appellate authorities seem to be divided on this issue, a closer inspection reveals that the testator must use specific language in order to establish a contrary intent; in the absence of such language, a contrary intent will not be implied.

█ In support of her argument that the will unambiguously establishes a contrary intent, appellant refers us to the case of *In re Benham Estate*, 4 Fiduciary Reporter 2d 202 (O.C. Chester County 1983). The will in *Benham* contained clauses similar to the one at issue here; however, the order in which they fell was reversed, i.e., the taxation clause preceded the residuary clause. The court in *Benham*, as a result of the position of the clauses, concluded that the testatrix had indicated a sufficient contrary intent. *Benham* is not controlling authority, nor do we find the reasoning pertaining to the order of the clauses to be exceedingly persuasive. Had the testatrix used the specific language, the order of the clauses in the will would be irrelevant. Appellant also cites language from *In re Wright Estate*, 44 D. & C.3d 41, 44, 6 Fiduciary Reporter 2d 337 (O.C. Montgomery County 1986) where the court discussed these types of clauses. The trial court determined in

*Wright* that the testatrix did not evidence a contrary intent. However, in dictum the court stated that tax clauses of this type had a different purpose prior to 1961, and intimated that a different result might have occurred if the will had been drafted after 1961, as the taxation clause would be rendered meaningless unless construed to alter the statutory scheme. *Wright,* 44 D. & C.3d at 45, 6 Fiduciary Reporter at 338–339.

Appellant relies on *Wright* to support her contention that clause 12 will be rendered meaningless if we do not construe it so as to require the taxes to be paid out of the entire residuary portion of the estate. Such reasoning is flawed and is contrary to appellate and statutory authority. Clause 12 simply provides that all estate and inheritance taxes are to be paid out of the residuary portion of the estate, but does not explain how the taxes are to be apportioned among the residuary beneficiaries. Thus, the interpretation of the trial court does not render the clause meaningless. Clause 12 is merely a recitation of the law as found in § 3702(b)(1), *supra.* The clause may still be enforced, but in the absence of further direction from the testatrix, the statutory presumption must be applied. If the testatrix had desired to disrupt the statutory scheme, she could have used the appropriate language and specifically stated that all taxes were to be paid from the residue prior to distribution and that no part of the taxes should be pro-rated or apportioned among the persons or beneficiaries receiving the taxable property. Unfortunately for appellant, the requisite specificity is lacking.

Finally, appellant claims that the term "absolutely", which is inserted after Melanie Bannan's name in clause 11, must be construed with clause 12 so that together the two clauses evince a contrary intent. The word absolutely has been defined as "in an absolute manner or condition; independently, unconditionally, entirely or positively", Webster's Third New International Dictionary 7 (1966). When used in a will, this word has been interpreted as "indicat[ing] that [the] testat[rix]'s primary intent was to make a

bequest to the [beneficiary]." *Estate of Terrell*, 47 Erie County Legal Journal 78, 82 (1964). We therefore must conclude that the testatrix in this case, by use of the term "absolutely", intended only to give Melanie Bannan an unconditional one-third share of the residue, and despite appellant's definitional gymnastics to the contrary, the term cannot be construed as implying an intent to disrupt the statutory apportionment scheme.

 We further observe that the residuary beneficiaries in this case are charities. Under § 3702(c), if the bequest is allowable as a marital, orphan's or charitable deduction, then no federal estate tax may be apportioned against such an interest. In this case, the bequest given would seem to qualify as a charitable deduction, which would benefit the estate by decreasing the amount of estate tax due. Thus, under § 3702(b)(1), appellant's share must bear the burden of paying the entire estate tax as the shares allocated to the charities are tax exempt. If appellant's interpretation were adopted, however, the shares given to the charities would be reduced, thereby reducing the deduction available to the estate and causing the estate to pay a greater amount of estate tax. While the testatrix was free to upset this scheme, it does not appear from her will that such was her intent. Accordingly, we must affirm the decision of the trial court.

 The above analysis may be applied with equal vigor to the Pennsylvania inheritance taxes. 20 Pa.C.S.A. § 3703 states that "[t]he Pennsylvania inheritance tax shall be apportioned as provided in the act of June 15, 1961 (P:L. 373, No. 207), known as the 'Inheritance and Estate Tax Act of 1961.' "[1] Therefore, we must turn to the provisions of this act. First it must be noted that 72 Pa.C.S.A. § 1711(c)(1), (2) specifically exempts charities and fraternal organizations from taxation. 72 Pa.C.S.A. § 1744 governs the source of payment for inheritance taxes and provides:

1. This act was previously located in 72 P.S. §§ 2485–101 et seq., which has now been repealed. The new provisions governing inheritance taxes are found in 72 Pa.C.S.A. §§ 1701 et seq.

**(a) Outright devises and bequests.**—In the absence of a contrary intent appearing in the will, the inheritance tax, including interest, on the transfer of property which passes by will absolutely and in fee, and which is not part of the residuary estate, shall be paid out of the residuary estate and charged in the same manner as a general administration expense of the estate. The payments shall be made by the personal representative and, if not so paid, shall be made by the transferee of the residuary estate. . . .

**(f) Other transfers.**—In the absence of contrary intent appearing in the will or other instrument of transfer and except as otherwise provided in this section, the ultimate liability for the inheritance tax, including interest shall be upon each transferee.

Thus, unless contrary intent appears, the taxes are to be paid from the residuary estate. In this case, the charities are exempt from taxation, and therefore, the only inheritance taxes remaining, after payment of inheritance tax on the pre-residuary bequests, are on the residuary share bequeathed to appellant. As we held above, there is no contrary intent appearing in this will. Moreover, appellant only paid inheritance tax on her share of the residuary estate, since the executors deducted the inheritance taxes on the pre-residuary bequests from the residuary portion of the estate before it was divided among the residuary beneficiaries. Accordingly, the trial court was correct in affirming this portion of the account.

 The last issue raised by appellant concerns the admission of extrinsic evidence. With regard to this issue this court has stated:

When the court can ascertain the intent of the testator with reasonable certainty through examination of the will itself, it generally does not look to matters external to the will. . . . 'Where, however, a court cannot feel such confidence in distributing the estate by reference to the will only, . . . it is proper and necessary to inquire into the

254

circumstances of the testator at the time of execution of his will and other evidence which bears on intent.'

*Estate of McKenna, supra,* 340 Pa.Super. at 110, 489 A.2d at 865 (citations omitted). In reviewing the relevant clauses of the will, we can discern no ambiguities, and counsel for appellant agrees with this premise. See Brief of Appellant Bannan at p. 16. Nonetheless, appellant argues that it was error for the trial court to exclude the scrivener's testimony and urges us to adopt the "arm-chair rule." Because the will is clearly not ambiguous, we can see no reason to discard the "four corners rule" reaffirmed by this court in *McKenna.* Accordingly, we find appellant's argument to be without merit and affirm the trial court on this basis.

Decree affirmed.