**In re ESTATE OF Gail B. JONES, Deceased.**

**Appeal of Benjamin J. Jones, Jr.**

Superior Court of Pennsylvania.

Argued Feb. 13, 2002.

Filed April 15, 2002.

James D. Cameron, Harrisburg, for appellant.

Donald M. Lewis, Harrisburg, for appellant.

BEFORE: ORIE MELVIN, KLEIN and OLSZEWSKI, JJ.

KLEIN, J.

¶ 1 Benjamin J. Jones, Jr., (Benjamin) the Executor of the Estate of Gail B. Jones, Deceased, appeals from an Orphans' Court's order entered in the Court of Common Pleas of Dauphin County. The order declared that the Federal and Pennsylvania estate taxes and the Pennsylvania inheritance tax due on the property forming the decedent's gross estate shall be paid from the principal of the residuary of the estate in accordance with the decedent's Last Will and Testament. Benjamin argues on appeal that liability for those taxes should be equitably apportioned between the residuary estate—of which he is the sole beneficiary—and the Inter Vivos Trust settled by Gail Jones—of which Carolyn Leech (Carolyn), Gail's sister, is the sole beneficiary. Upon our plenary review of the operative provisions of both the Last Will and Testament and the Inter Vivos Trust, we conclude that the taxes are to be paid out of the residuary of the estate. Accordingly, we affirm.

¶ 2 Gail Jones executed a Last Will and Testament dated November 12, 1991. After directing several specific bequests, the Will directs that the residue of her estate shall be distributed to Benjamin. The Will then pertinently provides:

> **All federal, state and other death taxes payable on the property forming my gross estate for tax purposes, whether or not it passes under this Will, shall be paid out of the principal of my residuary Estate just as if they were my debts, and none of those taxes shall be charged against my beneficiary.**

¶ 3 Three months later, Gail settled an Inter Vivos Trust. Gail directed that, upon her death, the entirety of the trust estate be transferred to Carolyn. The Trust Agreement pertinently provides:

> **All property taxes, assessments, fees, charges and other expenses incurred by the Trustee in the administration or protection of the Trust created by this Agreement, including the compensation of the Trustee provided for in this Agreement, shall be a charge on the Trust Estate and shall be paid by the Trustee prior to the final distribution of the Trust Estate in full out of the principal or in full out of the income of the Trust Estate or partially out of the income of the Trust Estate in such a manner and proportions as the Trustee may deem be advisable.**

¶ 4 Gail died on August 13, 1999. Pursuant to the provisions of her Will, Benjamin, Gail's husband, was appointed Executor of the Estate. The Will was duly admitted to probate.

¶ 5 At the time of Gail's death, the Inter Vivos Trust comprised the bulk of her taxable estate. Benjamin was concerned that the residuary estate would be rendered insolvent if it were required to pay the Federal and Pennsylvania estate and Pennsylvania inheritance taxes attributable to the value of the Inter Vivos Trust. If this were to occur, the Trust Estate would pass to Carolyn, free and clear of any taxes, while Benjamin would receive nothing because the residuary estate would be depleted after it paid all estate and inheritance taxes on the non-residuary taxable property including the Trust Estate.

¶ 6 In his effort to avoid such a result, Benjamin sought a ruling from the Orphans' Court that the Trust should be held liable for its equitably apportioned share (in this case, the vast majority) of the Federal and Pennsylvania estate and Pennsylvania inheritance taxes. He filed a pleading entitled Petition for Apportionment of Death Taxes pursuant to the Tax Apportionment Act. Benjamin's petition asked the Orphans' Court to construe Gail's Last Will and Testament and the Trust Agreement, and determine the rights and obligations of the interested parties to those instruments vis-á-vis liability for Federal and Pennsylvania estate and Pennsylvania inheritance taxes.

¶ 7 The Orphans' Court declared that the tax clause of Gail's Last Will and Testament controlled and required that all estate and inheritance taxes be paid by the residuary estate. This appeal followed.

■ ¶ 8 As a threshold matter, we must first determine whether we have appellate jurisdiction to hear this appeal. As a general proposition, an Orphans' Court's confirmation of the final account of an estate, after exceptions have been filed and ruled upon, is the final order for purposes of appeal. *In re Estate of Habazin*, 451 Pa.Super. 421, 679 A.2d 1293 (1996). Admittedly, there has been neither a final account nor a ruling upon exceptions in this case. We find, however, that under the circumstances of this case, the order appealed from is a final appealable order within the meaning of Pa.R.A.P. 341.

■ ¶ 9 Elevating the substance of Benjamin's petition over its form, we view the petition as having initiated a declaratory judgment action. *See* 42 Pa.C.S. §§ 7533 and 7535 (providing, in pertinent part, that any person interested in a will, trust and/or a decedent's estate may obtain a declaration of rights or legal relations in respect thereto); *see also In re Merrick's Estate*, 443 Pa. 388, 275 A.2d 18 (1971) (reaffirming prior decisions holding that Orphans' Court has jurisdiction to entertain declaratory judgment actions). Benjamin served his petition upon Carolyn (the beneficiary of the Inter Vivos Trust), Muncy Bank and Trust Company (the trustee of the Inter Vivos Trust), the Internal Revenue Service and the Pennsylvania Department of Revenue, thereby complying with the requirements of 42 Pa.C.S. § 7540 (identifying necessary parties where declaratory relief is sought). Inasmuch as the Orphans' Court's order affirmatively declared that the residuary estate was liable for all Federal and Pennsylvania estate and Pennsylvania inheritance taxes, it was a final order within the meaning of 42 Pa.C.S. § 7532. Accordingly, the order was immediately appealable as of right pursuant to Pa.R.A.P. 341(b)(2). *General Accident Insurance Co. of America v. Allen*, 547 Pa. 693, 692 A.2d 1089, 1095 (1997) order affirmatively declaring the obligations of a party to a written instrument is defined as a final order by 42 Pa.C.S. § 7532 and is therefore immediately appealable as of right pursuant to Pa.R.A.P. 341(b)(2).

■ ¶ 10 Turning to the merits of the appeal, Benjamin argues that the Orphans' Court gave credence to the tax apportionment language of the Will, and improperly ignored the language of the Trust. More specifically, he maintains the word "assessment" in the above-quoted portion of the Trust Agreement means that the Trust must bear its proportionate share of the death taxes. Benjamin also presents the alternative argument that, even if the Will's tax clause applies, it was not specific enough to overcome the statutory scheme of equitable apportionment of the tax liability. *See generally In re: Estate of Pyle*, 391 Pa.Super. 244, 570 A.2d 1074, 1076–79 (1990) (discussing the statutory scheme of

apportionment of Pennsylvania and Federal estate taxes and Pennsylvania inheritance taxes and a testator's ability to direct a different apportionment scheme); 20 P.S. § 884. We disagree on both counts.[1]

¶ 11 We reject Benjamin's suggested construction of the Will and the Trust Agreement because it is not a fair reading of the two documents. The Will employs standard language that clearly and specifically states that all *death taxes* should be paid from the principal of the residuary estate. The Trust Agreement includes a specific provision for payment of *property taxes,* but makes no mention of *death taxes.* It is true that the Trust Agreement provides that any "assessments" incurred while administering the trust should be paid before final distribution, from income, principal or both, at the discretion of the trustee. However, in light of Gail's use of specific language directing the payment of death taxes by the principal of the residuary estate and directing payment of property taxes by the trust, we do not find reasonable Benjamin's suggestion that Gail intended the portion of the Trust Agreement that refers to assessments to include death taxes. The specific language of the Will that addresses death taxes does not conflict with either the specific language of the Trust that addresses property taxes or the general language of the Trust that addresses the property taxes and other charges or assessments incurred during the administration of the Trust.

¶ 12 We reject Benjamin's alternative argument because, like the Orphans' Court Judge, the Honorable Todd A. Hoover, we find that the tax clause in the Will was sufficiently clear and specific to overcome the statutory scheme for apportionment of estate and inheritance taxes. *See generally In re Estate of Fleishman,* 479 Pa. 569, 388 A.2d 1077, 1080–81 (1978) (citing authorities describing the requisites for a valid exercise of a testator's authority to direct an apportionment of estate and inheritance taxes different from the statutory scheme). The Will's tax clause specifically provides that the residuary estate will pay all death taxes, including those attributable to property that does not pass under the Will.

¶ 13 In this regard, Benjamin's reliance on *In re Estate of Erieg,* 439 Pa. 550, 267 A.2d 841 (1970), is misplaced. In *Erieg,* the testator's will provided for payment of all death taxes from his residuary estate, but did not specify that the taxes were to be paid from the *principal* of the residuary estate. The will further provided 67% of the residuary estate would pass to his wife, and 33% would pass to his niece. The executor's proposed distribution calculated the gross taxable residuary estate. That amount was divided between the wife and niece in accordance with the percentages specified in the will. The executor's distribution allocated the wife's marital exclusion from federal estate tax solely to the wife's share of the residuary estate. As a result, the wife's share was charged with approximately five percent of the federal estate tax while the niece's share was charged with 95%. The niece filed exceptions in which she proposed an alternative method of distribution wherein all federal estate tax and state inheritance tax would be deducted from the residuary estate before it was divided into the shares specified in the will. Under her proposed formula, the niece would receive substantially more than she would receive pursuant to the executor's formula. The orphans' court dismissed the niece's exceptions and

---

1. As the issues presented are purely questions of law, we exercise plenary review. *Phillips v. A–Best Products Co.,* 542 Pa. 124, 665 A.2d 1167 (1995).

affirmed the executor's proposed distribution scheme.

¶ 14 On appeal, the Pennsylvania Supreme Court affirmed. The Court observed that while the testator had specifically directed that all death taxes be paid from the residuary estate, the testator had not provided any guidance as to the allocation of the tax liability between the *two beneficiaries of the residuary estate. Id.* at 845 (emphasis added). The Court thus distinguished Erieg's will from those wills that direct that the taxes are chargeable to the principal of the residuary estate. Accordingly, the Supreme Court concluded that the tax clause in Erieg's will was not sufficiently clear and specific to overcome the statutory scheme for apportionment of the taxes.

¶ 15 Two factors render *Erieg* inapplicable here. First, Benjamin is the sole beneficiary of the residuary estate. Thus, there is no issue of allocation of tax liability among multiple beneficiaries of the residuary estate. Second, Gail specifically provided that all death taxes were to be paid out of the principal of the residuary estate. In other words, her intent was to benefit Benjamin only to the extent that there remained any monies in the residuary estate after all death taxes had been paid, including the death taxes attributable to the trust estate.[2]

■ ¶ 16 Contrary to Benjamin's arguments, wills with tax clauses similar to Gail's have been held to be sufficiently clear and unambiguous to overcome the statutory scheme of apportionment. *See, e.g., In re Estate of Fleishman,* 479 Pa. 569, 388 A.2d 1077 (1978) (tax clause in will

directing that all death taxes be paid out of the principal of the residuary estate overcame statutory scheme of apportionment of death taxes); *Audenried's Estate,* 376 Pa. 31, 101 A.2d 721 (1954) (same). Benjamin's equitable arguments do not convince us to rule otherwise in this case. For even if Gail's expressed wishes produce the results that Benjamin complains of, "it is the fault of the testator and not of the court. [The] will must control the distribution of the estate, and when [its] language is clear and explicit, [its] intention thus plainly expressed must be obeyed regardless of any apparent or real inequalities produced among the legatees." *In re Brown's Estate,* 208 Pa. 161, 57 A. 360, 361 (1904).

¶ 17 Finally, Benjamin urges us to reverse the Orphans' Court declaration out of concern that the residuary estate may not have sufficient funds to pay all of the death taxes. As noble and selfless as Benjamin's professed concern that the Internal Revenue Service be paid in full may be, it does not entitle him to relief on appeal. As Carolyn accurately states in her brief, the Internal Revenue Code provides the means for the IRS to impose liability on her, as a transferee of property that was included in the gross taxable estate, if the principal of Gail's residuary estate does not have funds sufficient to pay the taxes due and owing. 26 U.S.C. § 6324(a)(2).

¶ 18 In conclusion, the tax clause of Gail's will provided that all death taxes were to be paid out of the principal of her residuary estate, and, if anything remained in the residuary estate after satisfaction of the tax liability, it would pass to Benjamin. The language employed in the tax clause

2. For this same reason, Benjamin's reliance on *Jeffery's Estate,* 333 Pa. 15, 3 A.2d 393 (1939), is also misplaced. Although *Jeffery's Estate* also involved both a will and trust property that passed outside of the will, there is no indication that Jeffrey's will specifically directed that all death taxes were to be paid out of the principal of the residuary estate. Thus, unlike the instant case, the testator did not condition the bequest of the residuary estate on the liquidity of the residuary estate after payment of all death taxes.

of her will was sufficiently clear and unambiguous to overcome the statutory scheme of apportionment of death taxes. *Estate of Fleishman, supra.* Moreover, nothing in the Trust Agreement was inconsistent with Gail's express directives regarding payment of death taxes. Consequently, we affirm the Orphans' Court's declaration that all death taxes, including those attributable to the value of the trust estate that passed to Carolyn outside of probate, are to be paid out of the principal of the residuary estate.[3]

3. We have not analyzed the Federal and Pennsylvania estate taxes and the Pennsylvania inheritance tax separately because, as Benjamin concedes in his brief, the result will be the same for each tax. Appellant's brief at p. 13, 3 A.2d 393. Just as sections 3701 and 3704 of the Probate, Estate and Fiduciaries Code, 20 Pa.C.S. §§ 3701 and 3704, permitted Gail to direct the apportionment of Federal and Pennsylvania estate taxes, the Inheritance and Estate Tax Act, 72 P.S. § 9144, permitted Gail to direct the apportionment of Pennsylvania inheritance taxes. For the same reasons we find Gail's will overcomes the statutory scheme for apportionment of the Federal and Pennsylvania estate taxes, we also find it overcomes the statutory scheme for apportionment of Pennsylvania inheritance tax.