J-A08007-23

2023 PA Super 138

| | | |
|---|---|---|
| IN RE: ESTATE OF J. VINCENT BAVOL, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: TIMOTHY TODD SCHRADER | : | |
| | : | No. 417 WDA 2022 |

Appeal from the Order Entered March 23, 2022
In the Court of Common Pleas of Allegheny County
Orphans' Court at No.:  No. 2371 of 2018

BEFORE:   STABILE, J., SULLIVAN, J., and PELLEGRINI, J.[*]

OPINION BY STABILE, J.:                    **FILED: July 28, 2023**

Appellant Timothy Todd Schrader ("Schrader"), as executor for the Estate of J. Vincent Bavol, Deceased, appeals from the March 23, 2022 order of the Court of Common Pleas of Allegheny County ("orphans' court"), sustaining the Commonwealth's objections to the amended first and final account.  Upon review, we affirm.

The facts and procedural history of this case are undisputed.  Briefly, on March 12, 2018, James Vincent Bavol ("Bavol" or "Decedent") executed and signed his last will and testament (the "Will") in the presence of two witnesses. In the Will, Bavol appointed Schrader to serve as the executor of his estate. Additionally, the Will authorized Schrader to pay Bavol's final expenses, sell a house located in Oakdale, Pennsylvania, and add the sale proceeds of the house to the residuary estate.   The Will also specifically bequeathed

_____

[*] Retired Senior Judge assigned to the Superior Court.

$100,000.00 to Schrader. It further provided for the distribution of the residuary estate to four separate charitable beneficiaries: 50% to St. Elizabeth Ann Seton; 20% to Western Pennsylvania Humane Society; 15% to Make a Wish; and 15% to Children's Hospital of Pittsburgh Foundation. Critically, Paragraph 5 of the Will, relating to payment of death taxes, provided:

> All estate, inheritance and other death taxes, together with interest and penalties payable thereon, with respect to property or interests **passing under my will** or any codicil thereto, **shall be paid out of the principal of my residuary estate without apportionment**.

The Will, 3/12/18, at ¶ 18 (emphasis added). The remaining provisions of the Will enumerated the powers that Schrader would have in connection with his service as the Executor.

On April 2, 2018, Bavol died. Following the filing of a petition for grant of letters, the Register of Wills granted Schrader the letters testamentary. Bavol had designated his two cousins, Natalie Gillespie and Monica Schallenberger, as beneficiaries of his individual retirement accounts that are non-probate assets.[1] N.T., Deposition, 1/27/22, at 27. Sometime after his death, the non-probate assets were distributed to the cousins.

On September 23, 2020, Schrader filed a first and final account and a petition for adjudication, and shared the same with the Pennsylvania Office of

---

[1] The cousins were not named in the Will.

- 2 -

the Attorney General.[2]  Although the final account revealed distributions made under the Will, it did not reference any non-probate distributions.  After the Attorney General received and reviewed the relevant documents, the Commonwealth expressed concerns about the amounts proposed for legal and the Executor's fees.  Schrader, via counsel, later withdrew the first and final account.

On June 2, 2021, Schrader filed an amended first and final account and an amended petition for adjudication.  Among other things,[3] the amended

_____

[2] As Bavol designated four charitable beneficiaries under the Will, the Commonwealth has standing to safeguard their interest.  Indeed, the Commonwealth Attorneys Act, 71 P.S. §§ 732-101 *et seq.*, authorizes the Attorney General to intervene in any action "involving charitable bequests" to ensure that charitable assets remain dedicated to their intended purposes.  71 P.S. § 732-204(c).  Separately, in **In re Estate of Pruner**, 136 A.2d 107 (Pa. 1957), our Supreme Court explained:

> [B]ecause the public is the object of the settlors' benefactions, private parties have insufficient financial interest in charitable trusts to oversee their enforcement.  Consequently, the Commonwealth itself must perform this function if charitable trusts are to be properly supervised.  The responsibility for public supervision traditionally has been delegated to the attorney general to be performed as an exercise of his *parens patriae* powers.

**Id.** at 109; **see In re Milton Hershey School Trust**, 807 A.2d 324, 330 (Pa. Cmwlth. 2002) (noting that because charities serve an indefinite number of people, the Commonwealth, through the Attorney General, is responsible for the public supervision of charities through his *parens patriae* powers).  The Black's Law Dictionary defines *parens patriae* as "[a] doctrine by which a government has standing to prosecute a lawsuit on behalf of a citizen, esp. on behalf of someone who is under a legal disability to prosecute the suit[.]" *Parens Patriae*, BLACK'S LAW DICTIONARY (11th ed. 2019).

[3] The amended account reflected that the estate had a remaining balance of $1,118,429.49 on hand.

account indicated that substantial inheritance taxes had been paid out of the residuary estate for non-probate assets distributed to the cousins. Both Gillespie and Schallenberger had each received a non-probate distribution of $467,677.50, for a total of $935,355.00. Schrader's counsel subsequently confirmed that the inheritance taxes paid out of the residuary estate had included taxes imposed on transfers of both probate and non-probate assets, including distributions made to and received by the cousins.

On August 12, 2021, the Commonwealth filed an objection to the amended account, challenging the payment of inheritance taxes from the residuary estate for non-probate distributions. In support, the Commonwealth pointed to Section 9144(f) of the Inheritance and Estate Tax Act, 72 P.S. § 9144(f), claiming that the cousins—not the estate—were responsible for paying the inheritance taxes on their respective non-probate distributions from Bavol's individual retirement accounts.[4] Furthermore, the Commonwealth relied on Paragraph 5 of the Will to argue that the residuary estate was responsible for paying only inheritance taxes attributable to transfers of probate assets, *i.e.*, property passing under the Will. The Commonwealth's objections were premised on the fact that the improper

---

[4] It is beyond cavil that charitable beneficiaries need not pay Pennsylvania inheritance taxes. **See** 72 P.S. § 9111(c). As a result, $620,999.48 in charitable, non-probate distributions made respectively to Pittsburgh Mercy Foundation and Marion Manor are specifically exempted from inheritance taxes.

allocation of the inheritance taxes had incorrectly reduced the distributions paid to the four charitable beneficiaries named in the Will.

On March 23, 2022, the orphans' court sustained the Commonwealth's objections. In so doing, the court determined that the inheritance taxes assessed on the transfers of non-charitable, non-probate gifts could not be deducted from the residuary estate and that the payment of such taxes remained "the responsibility of the individual transferees." Order, 3/23/22. Schrader timely appealed.[5] The orphans' court directed Schrader to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. Schrader complied. In response, the orphans' court issued a Pa.R.A.P. 1925(a) opinion.

On appeal, Schrader presents two issues for our review.

> I. Whether the [orphans'] court erred in holding that payment of inheritance taxes out of the principal of the residuary estate did not extend to the non-probate estate[.]

> II. Whether the [orphans'] court erred when it failed to consider parol evidence to determine the testator's true intent when a latent ambiguity in the tax clause of the [W]ill existed.

Appellant's Amended Brief at 4 (unnecessary capitalization omitted).[6] At the core, Schrader invites us to hold that Paragraph 5 of the Will permits the

_____

[5] Pending the outcome of this appeal, and pursuant the terms of a consent order dated May 3, 2022, Gillespie and Schallenberger each deposited $66,644.05 into an interest-bearing account at PNC Bank. These deposits reflected the inheritance taxes paid out of the residuary estate for non-probate the distributions made to Gillespie and Schallenberger.

[6] Following our September 1, 2022 grant of his application, Schrader filed an amended brief on October 3, 2022.

payment of inheritance taxes assessed on non-charitable, non-probate asset transfers. For the reasons that follow, we decline this invitation.[7]

"The effect of a tax clause contained in a will implicates a question of law." *In re Estate of Davis*, 128 A.3d 819, 821 (Pa. Super. 2015) (citation omitted). Thus, our scope of review is plenary and our standard of review is *de novo*. *Id.*

With respect to interpretation of wills, we have explained:

The testator's intent is the polestar in the construction of every will and that intent, if it is not unlawful, must prevail.

In order to ascertain the testamentary intent, a court must focus first and foremost on the precise wording of the will, and if ambiguity exists, on the circumstances under which the will was executed, only if the testator's intent remains uncertain may a court then resort to the general rules of construction. The words of a will are not to be viewed in a vacuum but rather as part of an overall testamentary plan.

When interpreting a will, we must give effect to word and clause where reasonably possible so as not to render any provision nugatory or mere surplusage. Further, technical words must ordinarily be given their common legal effect as it is presumed these words were intentionally and intelligently employed, especially where they are used by someone learned in probate law.

Courts are not permitted to determine what they think the testator might or would have desired under the existing circumstances, or even what they think the testator meant to say. Rather, the court must focus on the meaning of the testator's words within the four corners of the will. Finally, a court may not rewrite an unambiguous will.

---

[7] Based on the outcome of this appeal, we need not address Schrader's second issue.

*Id.* (citations omitted).

Section 9144 of the Inheritance and Estate Tax Act, relating to source of payment, provides in pertinent part:

> (f) In the absence of **a contrary intent appearing in the will or other instrument of transfer** and except as otherwise provided in this section, the ultimate liability for the inheritance tax, including interest, shall be upon each transferee.

72 P.S. § 9144(f) (emphasis added). Put differently, the ultimate liability for paying inheritance tax is upon the transferee, unless a contrary intent is expressed in the decedent's will and except as otherwise provided by statute. *In re Estate of Allen*, 960 A.2d 470, 472 (Pa. Super. 2008); *see In re Stadtfeld's Estate*, 58 A.2d 478, 481-82 (Pa. 1948) (noting that a statutory provision governing the administration of a testator's estate creates a presumption that the testator intends for certain taxes to be paid in a particular manner unless the testator's will "contains a specific provision" that is clearly "inconsistent with such presumption."). "Before the language of a tax clause in a will can be said to alter this liability, the language must be "unambiguous and open to no other interpretation." *Allen*, 960 A.2d at 472 (citation omitted); *see In re Estate of Harry Fleischman*, 388 A.2d 1077, 1080-81 (Pa. 1978) (stating "[a] testator's intent to allocate inheritance tax in a particular fashion 'must be unambiguous and open to no other interpretation.'").

In *In re Estate of Jones*, 796 A.2d 1003 (Pa. Super. 2002), we examined the effect of the tax apportionment language contained in a will

relative to whether it was sufficient to overcome statutory presumptions, such as the one created by Section 9144(f). There, the will contained the following provision:

> All federal, state and other death taxes payable on the property forming my gross estate for tax purposes, **whether or not it passes under this Will**, shall be paid out of the principal of my residuary Estate just as if they were my debts, and none of those taxes shall be charged against my beneficiary.

*Id.* at 1004 (emphasis added). This Court eventually determined that the will used "standard language that clearly and specifically states that all *death* taxes should be paid from the principal of the residuary estate." *Id.* at 1006 (emphasis in original). We further determined that the provision was "sufficiently clear and specific to overcome the statutory scheme for apportionment of estate and inheritance taxes." *Id.* It provided that the residuary estate would pay all death taxes, including those attributable to property that does not pass under the will. *Id.*

In **Allen**, the circumstances were different from **Jones**, because **Allen** involved a provision that contained, at best, neutral language, which did not address the responsibility for paying taxes on transfers of non-probate property. The executrix in **Allen** paid inheritance taxes from the residuary estate on non-probate assets that passed to her. The residuary beneficiary objected. The orphans' court directed the executrix to reimburse the estate for the inheritance taxes on non-probate assets that became her property.

Following the denial of exceptions, the executrix appealed. *Allen*, 960 A.2d

at 471. The will at issue in *Allen* contained the following provision:

> I direct my Executor to pay all inheritance, transfer, estate and similar taxes (including interest and penalties) assessed or payable by reason of my death on any property or interest in property which is included in my estate for the purpose of computing taxes.

*Id.* at 472. On appeal, we determined that the provision did not absolve the

transferee of her responsibility to pay inheritance taxes under Section 9144(f).

We reasoned:

> As to the first sentence of the tax clause, it instructs the [e]xecutrix to pay the taxes assessed by reason of the [d]ecedent's death on all his interests in property included in his estate for the purposes of tax computation. The jointly held assets, while non-probate items, were nonetheless subject to inheritance taxes assessed by reason of the [d]ecedent's death. *See* 72 P.S. §§ 9106, 9108. Thus, pursuant to the first sentence of the tax clause, the [e]xecutrix, when filing the tax returns, was directed to pay all such taxes due.
>
> The first sentence of the tax clause does not, however, designate the fund from which those taxes were to be paid. There is no unambiguous directive that the [e]xecutrix was to use funds from the residuary estate to pay taxes on property passing outside of the will-specifically, by survivorship. Put another way, there is no unambiguous language shifting the tax liability for non-probate joint property from the surviving tenant to the residual beneficiary.
>
> Accordingly, taking the first sentence to have the rather obvious meaning that the [e]xecutrix had the obligation to file tax returns and secure the payment of all taxes arising from the [d]ecedent's death does not necessarily mean that the [e]xecutrix was to take money from the residual estate to pay taxes on property passing by survivorship. Rather, a contrary meaning could be that the [e]xecutrix, while paying the taxes, was to secure or utilize funds for payment from the surviving tenant-namely, herself-for the jointly held property. Thus, consistent with 72 P.S. § 9144(f), she

would be liable for her own share of taxes for the non-probate property she received.

*Id.* at 472-73 (citation omitted).

The instant case is distinguishable from ***Jones*** and ***Allen***. As stated, the language contained in the will in ***Jones*** was sufficiently specific to overcome the presumption created by Section 9144(f). Moreover, the language in ***Allen*** was non-specific, ambiguous and open to other interpretation.

Here, the language at issue in Paragraph 5 of the Will does not seek to displace the presumption created by Section 9144(f), as it relates to non-probate property. On the contrary, the language of Paragraph 5 is specific, unambiguous and open to no other interpretation. Paragraph 5 is expressly limited to property passing under the Will (or any codicil thereto). As a result, based on the plain and unambiguous language of Paragraph 5 of the Will, Schrader cannot establish that Bavol intended to deviate from the statutory presumption created by Section 9144(f), requiring transferees to pay inheritance taxes relative to non-probate property transfers. The orphans' court, therefore, did not err in concluding that Gillespie and Schallenberger are responsible for paying inheritance taxes assessed on the distributions they respectively received from Bavol's individual retirement accounts. Accordingly, because the presumptions created by Section 9144(f) were not displaced by Paragraph 5 of the Will, the orphans' court did not err in

sustaining the Commonwealth's objections to Schrader's final account. Schrader does not obtain relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/28/2023